EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Celso Romero Figueroa<br><br>Peticionario<br><br>v.<br><br>Junta de Libertad Bajo Palabra<br><br>Recurrida<br>_____<br>Antonio Alemañy Rosado<br><br>Peticionario<br><br>v.<br><br>Junta de Libertad Bajo Palabra<br><br>Recurrida | 2026 TSPR 33<br><br>218 DPR ___ |

Número del Caso:  CC-2025-0210
                  cons. con CC-2025-0219


Fecha:  30 de marzo de 2026

Tribunal de Apelaciones:  Panel VIII

**CC-2025-0210**

Representantes legales de los peticionarios:

     Sociedad para Asistencia Legal

     Lcda. Emma Cristina Torres Martínez
     Lcda. Celimar Gracia Marín

Oficina del Procurador General:

     Hon. Omar Andino Figueroa
     Procurador General

     Lcdo. Frank A. Rosado Méndez
     Subprocurador General

     Lcda. Louanna N. Cruz Rivera
     Procuradora General Auxiliar

**CC-2025-0219**

Representantes legales de los peticionarios:

    Sociedad para Asistencia Legal

    Lcda. Celimar Gracia Marín
    Lcda. Emma Cristina Torres Martínez

Oficina del Procurador General:

    Hon. Omar Andino Figueroa
    Procurador General

    Lcdo. Frank A. Rosado Méndez
    Subprocurador General

    Lcda. Louanna N. Cruz Rivera
    Procuradora General Auxiliar

Materia: Derecho Penal – Efecto jurídico de una cláusula de reserva incorporada en la Ley Núm. 85-2024, en relación con la elegibilidad al privilegio de libertad bajo palabra de personas convictas por delitos bajo el Código Penal de 1974.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Celso Romero Figueroa<br>Peticionario<br>v.<br>Junta de Libertad Bajo Palabra<br>Parte Recurrida<br>_____<br><br>Antonio Alemañy Rosado<br>Peticionario<br>v.<br>Junta de Libertad Bajo Palabra<br>Parte Recurrida | CC-2025-0210<br>cons. con<br>CC-2025-0219 |

El Juez Asociado señor Candelario López emitió la Opinión del Tribunal.

En San Juan Puerto Rico, a 30 de marzo de 2026.

En esta ocasión, nos corresponde evaluar el efecto jurídico de una cláusula de reserva incorporada por la Asamblea Legislativa mediante la Ley Núm. 85-2024, *infra,* en relación con la elegibilidad al privilegio de libertad bajo palabra de personas convictas por, entre otros delitos, violación y actos lascivos, bajo el Código Penal de 1974. En específico, debemos examinar si esta cláusula limita válidamente la aplicación retroactiva del cómputo favorable establecido previamente por la Ley Núm. 85-2022, *infra.*

Concluimos que la cláusula de reserva contenida en la Ley Núm. 85-2024, *infra,* constituye una limitación válida

a la retroactividad favorable previamente adoptada por el legislador. Veamos.

# I

## A.

Surge de los autos del caso núm. CC-2025-0210 que, el 11 de marzo de 1996, el señor Celso Romero Figueroa (señor Romero Figueroa o peticionario) fue sentenciado por hechos ocurridos el 11 de marzo de 1995, luego de que un jurado lo encontrara culpable por los delitos tipificados en el Código Penal de Puerto Rico de 1974, actualmente derogado, de: violación (Artículo 99), actos lascivos (Artículo 105), amenazas (Artículo 153), escalamiento agravado (Artículo 171) y violación al Artículo 4 de la Ley de Armas de 1951, actualmente derogada. Meses más tarde, el 8 de mayo de 1996, el peticionario fue sentenciado por los delitos de agresión agravada (Artículo 95), escalamiento agravado (Artículo 171), tentativa de violación (Artículo 99), actos lascivos (Artículo 105) del Código Penal de 1974, actualmente derogado, e infracción al Artículo 4 de la Ley de Armas de 1951, actualmente derogada. La sentencia consolidada total ascendía a doscientos veintitrés (223) años.

El 26 de octubre de 2023, el Departamento de Corrección y Rehabilitación (DCR) preparó un *Informe Breve para Referir Casos de Sentencia por Delito Grave y Menos Grave ante la Junta de Libertad Bajo Palabra* (JLBP). El 1

de noviembre de 2023, el DCR refirió el caso a la JLBP para su evaluación y posterior determinación del beneficio. El 12 de junio de 2024 se celebró una vista de consideración.

El 26 de agosto de 2024, la JLBP notificó la *Resolución* en la que denegó el privilegio de libertad bajo palabra al señor Romero Figueroa debido a la exclusión creada por la Ley Núm. 85-2024, *infra*. En específico, se denegó el privilegio en virtud de lo dispuesto en la Sección 3 de la Ley Núm. 85-2024, *infra,* la cual establece que:

> La Junta no tendrá jurisdicción para atender los casos de las personas convictas por los delitos de ... violación, actos lascivos, (por lo que) no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.

La JLBP expresó carecer de jurisdicción para atender el caso del peticionario, en atención a que este fue convicto por los delitos de violación y actos lascivos. Conforme a la *Hoja de Control sobre Liquidación de Sentencia,* el peticionario finalizaría de cumplir su sentencia por el delito excluido de violación el 9 de octubre de 2094. Inconforme, el 16 de septiembre de 2024, el peticionario presentó una *Moción de Reconsideración de Concesión de Libertad Bajo Palabra*, la cual fue rechazada de plano.

Así las cosas, el 31 de octubre de 2024, el peticionario recurrió ante el Tribunal de Apelaciones

mediante una *Petición de Revisión Administrativa* en la cual alegó que la JLBP había errado al declararse sin jurisdicción, fundamentándose en la Ley Núm. 85-2024, *infra*, dado que la aplicación retroactiva de la misma resultaba en una violación al principio constitucional contra las leyes *ex post facto* y, en clara violación, al debido proceso de ley.

El 21 de febrero de 2025, el Tribunal de Apelaciones notificó una *Sentencia* mediante la cual confirmó el dictamen de la JLBP, aunque por un fundamento distinto. Su decisión se basó en que al peticionario no le era aplicable la Ley Núm. 85-2024, *infra*, ni los cálculos especiales de la Ley Núm. 85-2022, *infra,* al haber sido acusado bajo el Código Penal de 1974. Específicamente el foro entendió que:

> [E]l Código Penal aplicable era el código del 1974. […]. Siendo el Artículo 62 la única disposición en el Código Penal de 1974 relativa a libertad bajo palabra, concluimos que nada en dicho cuerpo legislativo priva a la Junta de atender en los méritos el caso del peticionario. […]
> De manera similar a lo ocurrido en el código penal, el Artículo 3 de la Ley de la Junta de Libertad Bajo Palabra, según enmendado hasta el 1995, que establece la *Autoridad, Poderes y Deberes de la Junta*, tampoco excluía al señor Romero Figueroa de beneficiarse del privilegio de libertad bajo palabra. […].
> De todo lo anterior se desprende que el peticionario sí puede ser considerado al privilegio de libertad bajo palabra, debido a que el estado de derecho al momento de los hechos delictivos contemplaba la posibilidad de solicitar el privilegio. Sin embargo, los cálculos a utilizarse para determinar su elegibilidad no pueden ser los de la Ley Núm. 85-2022.

Bajo este escenario, el peticionario cualificaría cuando cumpliera la mitad de la sentencia impuesta, según

lo dispone el Artículo 3 de la Ley Núm. 118-1974, *infra*.

El 10 de marzo de 2025, el peticionario presentó una *Moción*

*de Reconsideración* ante el Tribunal de Apelaciones. Sin

embargo, mediante una *Resolución* notificada el 20 de marzo

de 2025, el Tribunal de Apelaciones denegó la misma.

Inconforme, el 11 de abril de 2025, el peticionario

compareció ante nos mediante una *Petición de Certiorari* en

la cual señaló el siguiente error:

> Erró el Tribunal de Apelaciones al confirmar la
> resolución en la cual la JLBP se declaró sin
> jurisdicción para considerar al peticionario para el
> privilegio de Libertad Bajo Palabra basándose en la
> aplicación retroactiva de la Ley 85-2024 en clara
> violación al debido proceso de ley y a la prohibición
> constitucional en contra de la aplicación de las
> leyes ex post facto.

El 30 de mayo de 2025, mediante *Resolución,* este

Tribunal determinó expedir el caso y consolidarlo con el

caso núm. CC-2025-0219.

**B.**

Por otra parte, en el caso núm. CC-2025-0219, el 20 de

septiembre de 1999, el señor Antonio Alemañy Rosado (señor

Alemañy Rosado o peticionario) fue sentenciado por hechos

ocurridos en el año 1999, por los delitos tipificados en

el Código Penal de Puerto Rico de 1974, actualmente

derogado, de: violación (Artículo 99), actos lascivos

(Artículo 105), agresión agravada (Artículo 95) y violación

al Artículo 4 de la Ley de Armas de 1951, actualmente

derogada. Su sentencia total fue de setenta (70) años.

En el proceso de extinguir su sentencia, el DCR completó la *Hoja de Control sobre Liquidación de Sentencias*, en la cual se disponía que el acusado cumpliría el mínimo el 25 de diciembre de 2018 y el máximo el 25 de octubre de 2038. El 21 de agosto de 2016, la JLBP adquirió jurisdicción sobre su caso. Posteriormente, el 10 de agosto de 2022, mediante *Resolución*, determinó que el señor Alemañy Rosado no era merecedor del privilegio y dispuso que el caso podría volver a ser considerado en el mes de julio de 2023.

El 7 de noviembre de 2024, notificada el 2 de diciembre de 2024, la JLBP emitió una *Resolución* en la que se declaró sin jurisdicción para atender el caso del peticionario, conforme a lo dispuesto en la Ley Núm. 85-2024, *infra*. Su razonamiento se basó en que el señor Alemañy Rosado fue sentenciado por dos (2) de los delitos excluidos del privilegio, a saber, violación y actos lascivos y cumpliría el máximo de las penas correspondientes a estos delitos el 17 de noviembre de 2032. Por ello, la JLBP carecía de jurisdicción para atender el caso en esa etapa. Además, ordenó al DCR que refiriera el caso nuevamente a la JLBP una vez el peticionario cumpliera la totalidad de la sentencia por los delitos de violación y actos lascivos.

El 4 de diciembre de 2024, el señor Alemañy Rosado, representado por la Sociedad para la Asistencia Legal, presentó una *Moción de Reconsideración* ante la JLBP, en la

cual alegó que, la aplicación de lo dispuesto en la Ley Núm. 85-2024, *infra,* violentaba la prohibición constitucional contra leyes *ex post facto* y el debido proceso de ley. Sin embargo, la misma fue declarada No Ha Lugar el 12 de diciembre de 2024.

El 27 de enero de 2025, el peticionario presentó una *Petición de Revisión Administrativa* ante el Tribunal de Apelaciones en la cual planteó el mismo error, aduciendo que no eran pertinentes para los propósitos del caso la Ley Núm. 85-2022, *infra,* ni la Ley Núm. 85-2024, *infra,* ya que la JLBP había adquirido jurisdicción para considerar al acusado desde el 21 de agosto de 2016.

El 24 de febrero de 2025, el Tribunal de Apelaciones emitió una *Sentencia* en la cual confirmó el dictamen emitido por la JLBP. Los fundamentos para su decisión consistían en que la Ley Núm. 85-2024, *infra,* no violenta la protección contra leyes *ex post facto*, ya que la referida ley no le eliminaba al acusado la posibilidad de ser considerado al privilegio de libertad bajo palabra, sino que le eliminaba el poder beneficiarse de los cálculos de la Ley Núm. 85-2022, *infra.* No obstante, el foro apelativo intermedio concluyó que, de acuerdo con el estado de derecho vigente al momento de los hechos delictivos, el acusado puede, en su momento, ser considerado al beneficio de libertad bajo palabra.

El 10 de marzo de 2025, el señor Alemañy Rosado presentó un escrito de *Reconsideración* ante el Tribunal de

Apelaciones. El mismo se fundamentaba en que la Ley Núm. 85-2024, *infra*, incidía en la prohibición contra leyes *ex post facto*, ya que la eliminación retroactiva del beneficio de libertad bajo palabra constituía una forma mucho más onerosa de extinguir la sentencia en el presente caso. El 17 de marzo de 2025, el foro apelativo intermedio declaró No Ha Lugar la solicitud de reconsideración.

En desacuerdo, el 16 de abril de 2025, el peticionario acudió ante nos mediante una *Petición de Certiorari* esbozando el siguiente señalamiento de error:

> Erró el Tribunal de Apelaciones al confirmar la Resolución de la Junta de Libertad Bajo Palabra mediante la cual se declaró sin jurisdicción para continuar con el proceso de consideración del peticionario para el privilegio de libertad bajo palabra aplicando retroactivamente la Ley 85-2024 y violentando así el debido proceso de ley y la prohibición constitucional que prohíbe la aplicación de las leyes ex post facto.

El 30 de mayo de 2025, mediante *Resolución,* este Tribunal determinó expedir el caso y consolidarlo con el caso núm. CC-2025-0210.

Contando con la comparecencia de las partes, y habiéndose expedido los autos en ambos casos, nos encontramos en posición de resolver.

## II

### A. Doctrina de Evitación Constitucional

Recientemente, reiteramos la norma respecto a que los planteamientos constitucionales no deben abordarse cuando un caso puede resolverse mediante un análisis estatutario

válido. *Comisionado Electoral v. Pres. CEE et al.*, 2025 TSPR 54, 215 DPR __ (2025). De este modo, destacamos que "[e]n su concepción clásica la Doctrina de Evitación Constitucional requiere que una vez los foros judiciales se enfrenten a una alegada ley inconstitucional, deberán auscultar si se puede resolver el asunto únicamente mediante un análisis del estatuto". Íd.

Asimismo, expresamos que en nuestra jurisdicción los planteamientos constitucionales no se deben abordar cuando el caso se puede resolver a través de una de las siguientes maneras: (1) mediante un análisis estatutario válido; (2) en armonía con los criterios de las partes y en consonancia con los mejores fines de la justicia; (3) al existir una interpretación razonable de la legislación que permita soslayar la cuestión constitucional, y (4) porque la controversia puede quedar resuelta definitivamente por otros fundamentos. Íd. (citando a *Domínguez Maldonado v. E.L.A.*, 137 DPR 954, 964 esc.4 (1995)).

La Doctrina de Evitación Constitucional ha sido incorporada al ordenamiento jurídico puertorriqueño como manifestación del respeto a la separación de poderes y de la función interpretativa limitada del Poder Judicial. Véase, *E.L.A. v. Aguayo*, 80 DPR 554, 596-597 (1958). Así las cosas, este Tribunal reitera que cuando se cuestiona la validez de una ley o se suscita alguna duda sobre su constitucionalidad, los tribunales deben asegurarse de que no existe otra posible interpretación razonable de la ley.

Véase, *Caquías v. Asoc. Res. Mansiones Río Piedras*, 134 DPR 181, 189 (1993).

**B. Junta de Libertad Bajo Palabra**

La JLBP, organismo adscrito al DCR, fue creada mediante la aprobación de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, conocida como la Ley de la Junta de Libertad Bajo Palabra. 4 LPRA sec. 1501 *et seq*. La ley confirió a la JLBP la autoridad para conceder el beneficio de libertad bajo palabra a una persona recluida en una institución penal de Puerto Rico durante la parte final de su condena. Esto es siempre que la persona recluida no esté cumpliendo una sentencia por delitos excluidos del beneficio y haya cumplido el término mínimo dispuesto por ley. 4 LPRA sec. 1503. El propósito de la ley fue dar cumplimiento a la política pública establecida en la Constitución de Puerto Rico, en aras de propender al tratamiento adecuado de las personas convictas, con el fin de hacer posible su rehabilitación moral, social y económica. Véase, Art. VI, Sec. 19, Const. PR, LPRA, Tomo 1.

La Ley Núm. 118-1974, *supra,* ha sido objeto de varias enmiendas, entre las cuales se encuentran las implementadas a través de la Ley Núm. 85 del 11 de octubre de 2022, intitulada Ley para Enmendar el Artículo 308 de la Ley Núm. 146 de 2012, Código Penal de Puerto Rico y la Ley Núm. 118 de 1974, Ley de la Junta de Libertad Bajo Palabra (Ley Núm.

85-2022), que, entre sus disposiciones incluyó la siguiente:

> Esta Ley aplicará de manera retroactiva, independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada. Las cláusulas de prohibiciones absolutas de libertad bajo palabra en los delitos de leyes penales especiales no serán aplicables al caso de menores juzgados y sentenciados como adultos cuando contravengan lo aquí establecido.

La enmienda a la ley estableció cálculos favorables para determinar el mínimo de la sentencia a cumplir a los fines de ser elegible para el beneficio de libertad bajo palabra.

Poco después, la Ley Núm. 85 de 28 de mayo de 2024 (Ley Núm. 85-2024), enmendó la Ley Núm. 85-2022, para aclarar que el nuevo cómputo del mínimo requerido para la elegibilidad al privilegio de libertad bajo palabra no resulta aplicable a las personas convictas por los delitos expresamente excluidos por ley. La Sección Núm. 3 de este estatuto incluyó una cláusula de exclusión de la jurisdicción de la Junta de Libertad Bajo Palabra, que aclara lo siguiente:

> La Junta no tendrá jurisdicción para atender los casos de las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.

Además, la Ley Núm. 85-2024 incluyó una disposición relativa a la aplicación retroactiva del cómputo dispuesto por la Ley Núm. 85-2022 a las personas convictas por delitos sexuales y sus modalidades, la cual establece lo siguiente:

> La Ley 85-2022 no aplicará retroactivamente a las personas convictas por estas actuaciones delictivas, conforme a la clara intención de la Decimonovena Asamblea Legislativa de no extender este privilegio a los ofensores de la ley descritos en el párrafo anterior.
>
> La Ley 85-2022 no surtirá efecto en el cálculo de la sentencia de las personas convictas para los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.

## C. Principio de Favorabilidad y Cláusula de Reserva

En nuestro ordenamiento jurídico la ley vigente es la que aplica al tiempo de cometerse los hechos delictivos. *Pueblo v. DiCristina Rexach*, 204 DPR 779, 786 (2020); *Pueblo v. González*, 165 DPR 675, 684 (2005). Sin embargo, hemos adoptado el principio de favorabilidad en el cual "si una ley penal, cuyos efectos resultan en un tratamiento más favorable para una persona acusada, se aprueba con posterioridad a la comisión de los hechos delictivos, esta se debe aplicar retroactivamente, de modo que la persona acusada disfrute de sus beneficios". *Pueblo v. DiCristina Rexach*, *supra*, pág. 786.

El Art. 4 de la Ley Núm. 146-2012, según enmendada, conocida como el Código Penal de Puerto Rico de 2012, 33 LPRA sec. 5004, dispone lo siguiente:

> La ley penal aplicable es la vigente al momento de la comisión de los hechos.
> La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:
> **(a)** Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.
> **(b)** Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o al modo de ejecutarla, se aplicará retroactivamente.
> **(c)** Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar recluida o en restricción de libertad.
> En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho.

A tales efectos, el legislador tiene la facultad de establecer excepciones al principio y ordenar la aplicación prospectiva de la ley vigente al momento de la comisión del hecho punible, aunque esta sea menos favorable para la persona acusada que la ley vigente al momento de la condena o posterior a esta. *Pueblo v. González, supra,* pág. 686. Lo anterior se debe a la naturaleza estatutaria del principio y a la discreción que reserva el cuerpo legislativo. Véase, Art. 4 del Código Penal de 2012, *supra.* Resulta importante recalcar que un acusado no tiene un derecho constitucional a la aplicación retroactiva de leyes penales más favorables. *Pueblo v. González, supra,* pág. 686.

En consonancia con el principio de favorabilidad, se han adoptado las cláusulas de reserva, las cuales tienen como propósito asegurar la aplicación de leyes que han sido derogadas o enmendadas a los hechos ocurridos durante el periodo en que estuvieron vigentes, sin importar si resultan más favorables o desfavorables para la persona acusada. *Pueblo v. DiCristina Rexach*, *supra*, págs. 787-788. Anteriormente hemos expresado que, "mediante la incorporación de las cláusulas de reserva en los códigos penales, se ha advertido la intención del legislador de imponer limitaciones al principio de favorabilidad". *Pueblo v. Torres Cruz*, 194 DPR 53, 61 (2015).

Particularmente en el caso de *Pueblo v. González*, *supra*, págs. 694-695, pronunciamos que las cláusulas de reserva:

> [I]mpiden que una nueva ley penal que resulte ser más favorable a un acusado, convicto o sentenciado, sea aplicada de forma retroactiva, aun cuando la nueva ley derogue o enmiende una ley anterior; esto a su vez supone mantener vigentes las disposiciones legales que regían unos actos delictivos sin tomar en consideración que éstas hubiesen sido derogadas o enmendadas por una ley penal posterior más favorable.

A partir del marco jurídico previamente examinado, hemos establecido que al momento de evaluar si una nueva ley penal debe aplicarse de forma retroactiva, se debe comparar la ley vigente a la fecha de la comisión de los hechos delictivos con la nueva ley, y si resulta más beneficiosa, se aplicará retroactivamente, a menos que una cláusula de reserva lo prohíba. *Pueblo v. González*, *supra*,

pág. 704, citando a D. Nevares-Muñiz, *Nuevo Código Penal de Puerto Rico*, *comentado*, 5ta ed., San Juan, Inst. Desarrollo del Derecho, 2004-2005, pág.10.

### III

A la luz del marco normativo antes expuesto, corresponde que nos expresemos sobre la validez de una cláusula de reserva incorporada en la Ley Núm. 85-2024 para excluir la aplicabilidad del nuevo término de elegibilidad para el privilegio de libertad bajo palabra que dispone la Ley Núm. 85-2022 a aquellas personas convictas por, entre otros, delitos de violación y actos lascivos.

El señor Romero Figueroa señala que la aplicación de la Ley Núm. 85-2024 de forma retroactiva violenta la cláusula constitucional contra las leyes *ex post facto* y su debido proceso de ley. Argumenta que una vez la Ley Núm. 85-2022 concedió el derecho a la aplicación de un cálculo más favorable y beneficioso para la determinación del mínimo de sentencia, este cómputo entró a formar parte del debido proceso de ley. Según sostuvo, una vez le fue concedido retroactivamente el principio de favorabilidad mediante la Ley Núm. 85-2022, este solo puede ser restringido o eliminado prospectivamente mediante mandato constitucional.

Por su parte, el señor Alemañy Rosado señala que la Ley Núm. 85-2024, por disposición constitucional, no puede aplicarse de forma retroactiva pues ello incidiría en la

prohibición contra las leyes *ex post facto*. De acuerdo con el señor Alemañy Rosado, implementar la Ley Núm. 85-2024 aumenta su tiempo de encarcelamiento y resulta mucho más onerosa que la sentencia que está cumpliendo. Ello es en atención a que cuando ocurrieron los hechos de su caso los delitos sexuales no estaban excluidos del beneficio de libertad bajo palabra. En resumen, los peticionarios sostienen que erró el Tribunal de Apelaciones al confirmar la Resolución de la JLBP, mediante la cual se declaró sin jurisdicción, basándose en la aplicación retroactiva de la Ley Núm. 85-2024, en violación a la prohibición de las leyes *ex post facto*.

Por otro lado, la JLBP sostiene que el Tribunal de Apelaciones correctamente determinó que procedía confirmar la determinación de falta de jurisdicción de la JLBP, no por la aplicación retroactiva de la Ley Núm. 85-2024, sino por la aplicación de la cláusula de reserva contenida en dicha ley. En específico, la JLBP argumentó que, aun cuando la Ley Núm. 85-2022 tuvo el efecto de reducir el cómputo del mínimo para referir a los convictos a la consideración del privilegio de libertad bajo palabra, la Ley Núm. 85-2024 introdujo una cláusula de reserva, mediante la cual dispuso que a los convictos por los delitos sexuales no les aplicará el beneficio del nuevo cómputo que instituyó la Ley Núm. 85-2022.

Previo a entrar en la discusión pertinente, cabe destacar que, en el presente caso, resulta innecesario

adentrarse en el análisis constitucional de la controversia sobre leyes *ex post facto* pues la mera interpretación del texto legal provee una base suficiente para resolver el asunto. Debemos recordar que, conforme a la Doctrina de Evitación Constitucional, los tribunales deben abstenerse de considerar cuestiones constitucionales cuando el caso puede decidirse adecuadamente mediante un análisis estatutario válido. *Comisionado Electoral v. Pres. CEE et al., supra.* Por lo tanto, al examinar el lenguaje claro de la Ley Núm. 85-2024, este Tribunal entiende que no se requiere recurrir a un análisis constitucional para disponer del recurso. Veamos.

No cabe duda de que la Asamblea Legislativa, a través de la Ley Núm. 85-2022, estableció unos cálculos más favorables para determinar el mínimo de la sentencia a cumplir a los fines de ser elegible para el beneficio de libertad bajo palabra. De hecho, así lo expresó el legislador en la Exposición de Motivos del estatuto al decir que "[c]on la presente medida se busca establecer una manera justa, retributiva y rehabilitadora, que le permita a aquella persona convicta por varios delitos el poder ser considerada para libertad bajo palabra al cumplir con los términos de la sentencia más onerosa relacionada directamente con alguno de los delitos por los cuales fue encontrado culpable". Exposición de Motivos de la Ley Núm. 85-2022.

Asimismo, la Sección 3 de la Ley Núm. 85-2022 dispone

que la misma "aplicará de manera retroactiva, independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada". De esta forma, a partir de la promulgación de la Ley Núm. 85-2022, los peticionarios cualificaban al beneficio de libertad bajo palabra según los términos dispuestos en dicha ley. Ello es en virtud del principio de favorabilidad, el cual opera cuando el legislador reevalúa la conducta delictiva y decide excluirla del ámbito penal o reducir la severidad de su sanción. *Pueblo v. González, supra*, pág. 685.

Ahora bien, en el pasado hemos sido enfáticos en que el principio de favorabilidad es puramente estatutario y corresponde a un acto de gracia legislativa. *Pueblo v. DiCristina Rexach*, *supra*, pág. 787. En otras palabras, la aplicación retroactiva de leyes penales que son favorables depende enteramente de la prerrogativa del legislador. Íd. Por tal razón, el legislador tiene total discreción de crear excepciones a la aplicación retroactiva de la ley penal que resulte ser favorable a la persona acusada. De ahí es que surgen las llamadas cláusulas de reserva, las cuales "operan como una limitación al principio de favorabilidad". Íd., pág. 788.

En el año 2024, el legislador tuvo la prerrogativa de enmendar nuevamente las disposiciones relativas a los términos para cualificar al beneficio de libertad bajo

palabra. Además de ello, en la Ley Núm. 85-2024 el legislador se expresó respecto a la Ley Núm. 85-2022 y creó una limitación en su aplicación retroactiva. En específico, se dispuso que la Ley Núm. 85-2022 no aplicará retroactivamente a las personas convictas por los delitos de, entre otros, violación y actos lascivos. El estatuto estableció expresamente que la Ley Núm. 85-2022 no surtirá efecto en el cálculo de la sentencia de las personas convictas por los delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil.

Lo anterior refleja la voluntad del legislador de limitar a las personas convictas por los delitos antes mencionados de los beneficios incluidos en las disposiciones favorables de la Ley Núm. 85-2022, lo cual, a todas luces, sugiere ser una cláusula de reserva. De esta manera, según lo establecido por la propia Asamblea Legislativa en la Ley Núm. 85-2024, los peticionarios no cualifican al beneficio de libertad bajo palabra según los términos dispuestos en la Ley Núm. 85-2022, aun cuando ello les resulte menos favorable.

Conviene señalar que este análisis no implica que los peticionarios no puedan ser considerados al beneficio de libertad bajo palabra, sino que el efecto de la cláusula de reserva es que se compute el término para cualificar al beneficio según el estado de derecho vigente al momento en

que se cometieron los hechos. Después de todo, **el beneficio de libertad bajo palabra constituye un privilegio y no un derecho.** Su concesión y administración recae en el tribunal o en la JLBP y responde a la voluntad de la Asamblea Legislativa, por lo que no es una prerrogativa inherente del confinado. Este privilegio se otorga en el mejor interés de la sociedad y cuando las circunstancias establezcan que propiciará la rehabilitación del confinado. *Lebrón Pérez v. Alcaide, Cárcel de Distrito,* 91 DPR 567, 571 (1964).

Por otra parte, el ala disidente sugiere que la aplicación de la Ley Núm. 85-2024, constituye un aumento retroactivo del castigo impuesto a los peticionarios y, por consiguiente, una violación a la prohibición constitucional contra las leyes *ex post facto.* Sin embargo, cabe aclarar que el estatuto impugnado no altera la pena impuesta a los peticionarios ni modifica el término de reclusión fijado en sus sentencias, ni mucho menos redefine los delitos por los cuales fueron convictos. Lo que dispone la Ley Núm. 85-2024 es limitar el acceso a la consideración de un privilegio, a saber, el de la libertad bajo palabra, cuya concesión depende de la evaluación discrecional de la JLBP.

**Reiteramos que el disfrute del beneficio de libertad bajo palabra no constituye un derecho adquirido, sino un privilegio sujeto al cumplimiento de los requisitos y criterios establecidos por la ley y por la JLBP.** En ese

sentido, la concesión de este beneficio no es automática ni genera expectativa legítima alguna, pues depende del ejercicio de la discreción de la JLBP. Véase, Ley Núm. 118-1974 (4 LPRA sec. 1503).

Por lo tanto, en ambos casos, el Tribunal de Apelaciones actuó correctamente al aplicar la cláusula de reserva, mediante la cual la Asamblea Legislativa reafirmó que a los convictos por los delitos enumerados en la Ley Núm. 85-2024 no les resulta aplicable el beneficio del nuevo cómputo del mínimo de sentencia establecido por la Ley Núm. 85-2022. **Reafirmamos que la JLBP tendrá jurisdicción para evaluar la elegibilidad al privilegio de libertad bajo palabra cuando se trate de delitos de agresión sexual en todas sus modalidades, agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, según lo permita el estado de derecho vigente al momento de los hechos delictivos.**

## IV

Por los fundamentos antes expuestos, se confirman ambas determinaciones del Tribunal de Apelaciones. Así, se determina que la cláusula de reserva incorporada por la Asamblea Legislativa en la Ley Núm. 85-2024 constituye una limitación válida al principio estatutario de favorabilidad. En consecuencia, a los peticionarios no les resulta aplicable el cómputo más favorable dispuesto en la Ley Núm. 85-2022, y su elegibilidad al privilegio de

libertad bajo palabra deberá evaluarse conforme al estado de derecho vigente al momento de los hechos delictivos.

Se dictará Sentencia en conformidad.


                              Raúl A. Candelario López
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Celso Romero Figueroa<br><br>Peticionario<br><br>v.<br><br>Junta de Libertad Bajo Palabra<br><br>Parte Recurrida<br><br>_____<br><br>Antonio Alemañy Rosado<br><br>Peticionario<br><br>v.<br><br>Junta de Libertad Bajo Palabra<br><br>Parte Recurrida | CC-2025-0210<br><br>cons. con<br><br>CC-2025-0219 |

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de marzo de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirman ambas determinaciones del Tribunal de Apelaciones. Así, se determina que la cláusula de reserva incorporada por la Asamblea Legislativa en la Ley Núm. 85-2024 constituye una limitación válida al principio estatutario de favorabilidad. En consecuencia, a los peticionarios no les resulta aplicable el cómputo más favorable dispuesto en la Ley Núm. 85-2022, y su elegibilidad al privilegio de libertad bajo palabra deberá evaluarse conforme al estado de derecho vigente al momento de los hechos delictivos.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez, el Juez Asociado señor Estrella Martínez, el Juez Asociado señor Colón Pérez y la Jueza Asociada Rivera Pérez disienten con *Opinión* escrita.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Celso Romero Figueroa<br><br>Peticionario<br><br>v.<br><br>Junta de Libertad Bajo Palabra<br><br>Recurrida | CC-2025-0210<br>cons. con<br>CC-2025-0219 |  |
| Antonio Alemañy Rosado<br><br>Peticionario<br><br>v.<br><br>Junta de Libertad Bajo Palabra<br><br>Recurrida |  |  |

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión disidente

En San Juan, Puerto Rico, a 30 de marzo de 2026.

> **Mientras más reprochable es la conducta del ciudadano o de la ciudadana que nos ocupa, más vehementes debemos ser en el ejercicio de salvaguardar las protecciones constitucionales que le cobijan ante el Estado. Véase _Pueblo v. Ferrer Maldonado_, 201 DPR 974, 1000 (2019) (Opinión disidente, Jueza Presidenta Oronoz Rodríguez).**

Una mayoría de este Tribunal hoy opta por avalar un estatuto que incorporó, de modo retroactivo, una cláusula de

reserva y exclusión que infringe el principio constitucional en contra de las leyes *ex post facto*. El proceder no solo dispone que las personas convictas de ciertos delitos deben cumplir sentencias más onerosas previo a cualificar para el privilegio de libertad bajo palabra, sino que guarda silencio sobre el deber de la Junta de Libertad Bajo Palabra (JLBP) de atender el proceso de cualificación conforme a la legislación aprobada mientras la persona convicta extinguía su sentencia o el estado de derecho vigente al momento de los hechos delictivos, la que resulte más favorable.

Por entender que la Opinión mayoritaria desatiende una latente violación a la protección constitucional contra la aplicación de leyes *ex post facto*, disiento.

## I.

En vista de que el tracto procesal de la presente controversia forma parte de la Opinión mayoritaria, me limito a resaltar las incidencias legislativas que dieron paso a la disonancia jurídica particular que nos ocupa.

Por virtud de la *Ley de la Junta de Libertad Bajo Palabra*, Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1501 *et seq.* (Ley de la JLBP), la Legislatura le confirió a la JLBP la facultad de decretar la libertad bajo palabra de personas sumariadas en instituciones penales, de conformidad con los requisitos estatuidos. En particular, el mecanismo de libertad bajo palabra "permite que una persona que haya sido convicta y sentenciada a un término de cárcel **cumpla la última parte de su sentencia fuera de la institución penal,**

sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad". (Negrilla suplida). Quiles v. Del Valle, 167 DPR 458, 475 (2006), citando a Maldonado Elías v. González Rivera, 118 DPR 260, 275 (1987).

El 11 de octubre de 2022 la Asamblea Legislativa aprobó la Ley Núm. 85-2022 (2022 [Parte 1] Leyes de Puerto Rico 825-830), estatuto mediante el cual se establecieron ciertos cálculos favorables para determinar el mínimo de la sentencia a cumplir para ser elegible al beneficio de libertad bajo palabra. En específico, la Ley Núm. 85-2022 enmendó el Art. 308 de la Ley Núm. 146-2012, 33 LPRA sec. 5416, para establecer que:

> **Podrá así mismo decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico que haya sido convicta conforme a las disposiciones de la Ley 146-2012, conocida como "Código Penal de Puerto Rico de 2012" [,] al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto.** Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.
>
> En caso de la persona convicta de asesinato en primer grado bajo la Ley 146-2012, esta podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir veinticinco (25) años de su sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto.
>
> La Junta podrá considerar para la libertad bajo palabra a aquellas personas que hayan utilizado o intentado utilizar un arma de fuego ilegal en la comisión de un delito grave o su tentativa, según definido en la Ley 146-2012, según enmendada. La Junta podrá conceder el beneficio cuando se ha determinado reincidencia habitual por delitos no violentos al cumplir veinticinco (25) años de su sentencia de reclusión, pero no podrá conceder el beneficio cuando la persona haya resultado convicta por delitos de agresión sexual o pornografía infantil en cualquiera de sus modalidades, según definidos en la Ley 146-2012, según enmendada. Antes de conceder el beneficio, la Junta considerará todas las disposiciones contenidas en el Artículo 3-B de esta Ley y lo que contemplan en la Ley 22-1988, mejor conocida como la Ley de la "Carta de Derechos

de Víctimas y Testigos de Delito", según enmendada, para garantizarle a las victimas todos los derechos.

**En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos.** Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial. (Negrilla suplida). Ley Núm. 85-2022 (2022 [Parte 1] Leyes de Puerto Rico 829).

Resulta meritorio resaltar que la Ley Núm. 85-2022 se encuentra huérfana de una cláusula de reserva que exprese la intención legislativa de limitar la aplicación retroactiva de dicho estatuto. Inclusive, la Sección 3 de la Ley Núm. 85-2022 dispuso que

**[esta ley] aplicará de manera retroactiva,** independientemente del Código Penal o [de la] Ley Penal Especial vigente al momento de los hechos delictivos, **siempre y cuando resulte favorable para la persona condenada.** Las cláusulas de prohibiciones absolutas de libertad bajo palabra en los delitos de leyes penales especiales no serán aplicables al caso de menores juzgados y sentenciados como adultos cuando contravengan lo aquí establecido. (Negrilla suplida). Íd.

Posteriormente, la Asamblea Legislativa aprobó la Ley Núm. 85-2024 (2024 [Parte 1] Leyes de Puerto Rico 678-685), la cual enmendó las disposiciones que alteró la Ley Núm. 85-2022 para establecer que el nuevo cómputo del mínimo requerido para la elegibilidad del beneficio codificado por la Ley Núm. 85-2022 no era aplicable a las personas convictas por, entre otros, delitos de agresión sexual en cualquiera de sus modalidades.

Por otro lado, la Ley Núm. 85-2024 introdujo una cláusula de exclusión a los fines disponer que la JLBP no tendrá jurisdicción para atender los casos de personas convictas

por delitos de agresión sexual, secuestro, secuestro agravado, entre otros. Según se desprende de la Exposición de Motivos de la Ley Núm. 85-2024, y en interés de evitar que personas convictas de ciertos delitos se beneficien de los cómputos favorables establecidos en la Ley Núm. 85-2022, se dispuso "que la Ley 85-2022 no aplicará retroactivamente a las personas convictas por [ciertas] actuaciones delictivas y […] que el referido estatuto no surtirá efecto en el cálculo de su sentencia". Véase Exposición de Motivos de la Ley Núm. 85-2024.

**II.**

**A. *La protección contra leyes ex post facto***

Es ampliamente reconocido que en nuestro ordenamiento jurídico no se puede aplicar de manera retroactiva una norma que desfavorece a una persona convicta de delito, pues estaría en contravención con la protección constitucional contra leyes *ex post facto*. Sec. 12, Art. II, Const. ELA, LPRA, Tomo 1. Entre otras cosas, esta protección busca evitar que el Estado introduzca legislación de modo punitivo o arbitrario. González v. ELA, 167 DPR 400, 408 (2006). Se considera que una legislación atenta contra la prohibición de leyes *ex post facto* cuando están presente dos elementos: la retroactividad de la ley y su efecto prejudicial sobre la persona acusada o convicta. Weaver v. Graham, 450 US 24, 29 (1981); Calder v. Bull, 3 US 386, 390 (1798).

Cónsono con lo anterior, hemos reiterado que existen cuatro tipos de estatutos que son *ex post facto*, a saber, aquellos que: (1) criminalizan y castigan un acto que al ser

realizado no era delito; (2) agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) **alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido**, y (4) alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el *quantum* de evidencia necesario para encontrarlo culpable. González v. ELA, *supra*. A tales efectos, se considera *ex post facto* una ley que, en su relación al delito o sus consecuencias, **altera la situación de la persona acusada en su perjuicio**. Véase L. Rivera Román, *El nuevo código penal: su vigencia y el debate entre la aplicación de la ley más benigna y las cláusulas de reserva*, 40 Rev. Jur. UIPR 41, 44 (2005). A modo persuasivo, destacamos lo resuelto en In re Griffin, 63 Cal.2d 757, 408 P.2d 959, 48 Cal. Rptr. 183 (1965), caso en el cual se dispuso que la naturaleza *ex post facto* de un estatuto que modificó el tiempo a cumplir previo a cualificar para *parole*. Véase W. R. LaFave & J. Davis Ohlin, *Criminal Law*, 7th Ed., West Academic Publishing, pág. 145.

Por último, es necesario resaltar que la prohibición contra leyes *ex post facto* aplica en el ámbito penal; no obstante, **hemos reiterado que esta protección se extiende al ámbito administrativo cuando lo estatuido "acarrea consecuencias penales"**. (Negrilla suplida). Gotay Flores v. Adm. de Corrección, 180 DPR 703, 706 (2011); González v. ELA, *supra*, pág. 410.

### B. *El principio de favorabilidad*

Como norma general, y cónsono con lo dispuesto en nuestro Código Penal, la ley penal aplicable es la vigente al momento de los hechos. 33 LPRA sec. 5004. No obstante, en armonía con la doctrina continental europea, al derogar el Código Penal que regía desde 1902, en Puerto Rico se adoptó el principio de favorabilidad. Esta figura se incorporó por primera vez mediante el Art. 4 del Código Penal de 1974. Pueblo v. González, 165 DPR 675, 684 (2005). Actualmente, se encuentra consagrado por el Art. 4 del Código Penal de 2012, 33 LPRA sec. 5004, el cual dispone, en lo pertinente, que:

> **La ley penal aplicable es la vigente al momento de la comisión de los hechos.**
>
> La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:
> (a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.
> **(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o al modo de ejecutarla, se aplicará retroactivamente.**
> (c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar recluida o en restricción de libertad.
>
> En estos casos los efectos de la nueva ley o de la decisión judicial operarán de pleno derecho. (Negrilla suplida). 33 LPRA sec. 5004.

El principio de favorabilidad busca armonizar la pena de un delito a la nueva valoración que le brinda la legislatura por virtud del estatuto posterior. Pueblo v. Torres Cruz, 194 DPR 53, 79-80 (2015). **Esta es la única instancia permisible en la cual una legislatura puede aprobar una ley penal con carácter retroactivo,** pues se considera un acto de

gracia legislativa y responde a los intereses de rehabilitación consagrados en nuestra Constitución. <u>Pueblo v. González</u>, *supra*, pág. 686.[1]

### C. La cláusula de reserva

Ahora bien, la Asamblea Legislativa conserva la facultad discrecional de limitar la aplicación retroactiva de una ley penal más favorable mediante una cláusula de reserva válida. <u>Pueblo v. González</u>, 165 DPR 675, 701-702 (2005). **En ausencia de una cláusula de este tipo, el principio de favorabilidad opera en pleno derecho.** <u>Pueblo v. Torres Cruz</u>, 194 DPR 53, 62 (2015). Véase también <u>Pueblo v. DiCristina Rexach</u>, 204 DPR 779, 793 (2020) (razonamos que, en ausencia de una cláusula de reserva, no hay impedimento alguno para aplicar el principio de favorabilidad).

Lo anterior es consistente con nuestra determinación en <u>Pueblo v. González</u>, *supra*, pág. 692, pues citamos con aprobación la interpretación de la Corte Suprema federal en <u>Bradley *et al*. v. United States</u>, 410 US 605 (1973), a saber: "si una nueva ley penal—que derogue o enmiende una ley penal anterior—contiene, **en s[i] misma[,]** una cláusula de reserva específica, [e]sta debe prevalecer ya que tiene el propósito de impedir que sus disposiciones sean aplicadas a hechos cometidos ante[s] de su vigencia". (Negrilla suplida). En

---

[1] La Corte Suprema federal razonó que una ley puede atentar contra la protección de leyes *ex post facto* aun cuando su puesta en vigor responde a una gracia legislativa:

> [E]ven if a statute **merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.** (Negrilla suplida). <u>Weaver v. Graham</u>, 450 US 24 (1981).

aquella ocasión, razonamos que la inclusión de una cláusula de reserva impide que una nueva ley más favorable se aplique de forma retroactiva. <u>Pueblo v. González</u>, *supra*, págs. 694-695. No obstante, resaltamos que la intención legislativa deberá prevalecer **solo cuando esta no sobrepase los límites constitucionales**. <u>Íd</u>., pág. 695.

### III.

En el caso de autos, la JLBP emitió varias resoluciones a los fines de declararse sin jurisdicción para atender los petitorios que presentaron los Sres. Celso Romero Figueroa y Antonio Alemañy Rosado a los efectos de obtener el beneficio de libertad bajo palabra. Esta razonó que la Ley Núm. 85-2024 excluyó la aplicación de los cálculos favorables de la Ley Núm. 85-2022 y le privó de jurisdicción para atender en los méritos las referidas solicitudes.

La Ley Núm. 85-2024 pretende eliminar el efecto retroactivo favorable adoptado por virtud de la Ley Núm. 85-2022 para las personas convictas de ciertos delitos. De lo anterior se desprende la intención legislativa de puntualizar lo estatuido en la Ley Núm. 85-2022 y aumentar el término de reclusión de personas convictas —de cometer los delitos especificados— previo a que se consideren para el privilegio de libertad bajo palabra. Por su parte, la ley que creó estas condiciones más favorables -es decir, la Ley Núm. 85-2022- **<u>no</u>** contenía una cláusula de reserva que impidiera su retroactividad.

Eliminar la aplicación retroactiva de los efectos favorables de una nueva ley es una prerrogativa de la Asamblea Legislativa. Empero, a mi juicio, dicha prerrogativa debe ejercerse mediante la introducción de una cláusula de reserva al momento de aprobar la ley más benigna. En esta ocasión, por virtud de la Ley Núm. 85-2024, la Asamblea Legislativa pretendió incorporar una cláusula de reserva mediante un estatuto separado dos (2) años después de la puesta en vigor de la ley original. De este modo, se procuró eliminar una condición favorable a la cual las personas acusadas o convictas ya habían advenido en derecho.

Cónsono con lo previamente reseñado, concluyo que, en ausencia de una cláusula de reserva en la Ley Núm. 85-2022, **la favorabilidad fue automática y opera en pleno derecho.** Interpretar lo opuesto choca vigorosamente con las protecciones constitucionales que resguardan a las personas convictas de delitos, particularmente, violenta la prohibición de las leyes *ex post facto*.

Aunque esta protección constitucional, como regla general, se circunscribe al ámbito penal, la misma aplica cuando lo estatuido o, en este caso, la actuación de la agencia acarrea consecuencias penales. Gotay Flores v. Adm. de Corrección, *supra*. No cabe duda de que la Ley Núm. 85-2024 constituye una ley *ex post facto* pues redunda en un aumento en la pena que deben cumplir las personas convictas y elimina la posibilidad de que estos se beneficien de los cálculos más favorables introducidos por virtud de la Ley Núm. 85-2022.

Por otro lado, la Ley Núm. 85-2024 también pretende eliminar la jurisdicción de la JLBP para atender los casos específicos de personas convictas por delitos de agresión sexual en todas sus modalidades, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil. Al momento en que se cometieron los delitos en los casos que nos ocupan, el Código Penal del 2012 y la Ley de la JLBP les reconocía a los Sres. Celso Romero Figueroa y Antonio Alemañy Rosado la posibilidad comparecer ante la JLBP y solicitar el beneficio. No obstante, en un ejercicio desacertado de las prerrogativas legislativas, se eliminó tanto el efecto retroactivo de los cálculos favorables introducidos por virtud de la Ley Núm. 85-2022, como la facultad de las personas convictas de solicitar un privilegio que le correspondía conforme con el estado de derecho vigente al momento de los hechos delictivos.

A pesar de lo anterior, la mayoría de este Tribunal elude un análisis constitucional utilizando como subterfugio la doctrina de evasión constitucional. Se limita a aplicar un análisis puramente estatutario e intenta distraer sobre la inconstitucionalidad de la ley controvertida. No podemos abdicar nuestro deber de evaluar la validez de estatutos que transgreden derechos reconocidos por la Constitución. Esto, pues el efecto concreto de permitir que prevalezca la Ley Núm. 85-2024 es un aumento de la pena al cerrar la puerta a la consideración del beneficio de libertad bajo palabra de un grupo de personas convictas que tenían derecho a ello, lo cual, a todas luces, se encuentra en contravención con la

protección constitucional en contra de las leyes *ex post facto*.

Por todo lo anterior, disiento del curso adoptado por la mayoría y hubiera decretado la inconstitucionalidad de la Ley Núm. 85-2024 y su aplicación *ex post facto*. A su vez, revocaría la determinación del Tribunal de Apelaciones y las resoluciones de la JLBP, y ordenaría a la JLBP a atender en los méritos los casos de los Sres. Celso Romero Figueroa y Antonio Alemañy Rosado, conforme al estado de derecho vigente al momento de los hechos y a los efectos favorables de la Ley Núm. 85-2022, lo que resulte más benigno.

Maite D. Oronoz Rodríguez
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Celso Romero Figueroa<br><br>Peticionario<br><br>v.<br><br>Junta de Libertad Bajo Palabra<br><br>Recurrida | |
| Antonio Alemañy Rosado<br><br>Peticionario<br><br>v.<br><br>Junta de Libertad Bajo Palabra<br><br>Recurrida | CC-2025-0210<br>cons. con<br>CC-2025-0219 |

Opinión disidente emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 30 de marzo de 2026.

> Otro principio del derecho penal es *nulla poena sine lege*. De él deriva la prohibición de leyes *ex post facto*. Toda ley que **perjudique la situación** del acusado alterándola por lo que respecta al delito **o a sus consecuencias** se considera *ex post facto*. […] (Negrillas suplidas). Informe de la Comisión de la Carta de Derechos de la Convención Constituyente. 4 Diario de Sesiones de la Convención Constituyente 3186 (1952).

La controversia que nos ocupa no trata sobre evaluar los méritos de la política pública de excluir determinadas conductas delictivas de la posibilidad de cumplir la pena bajo la modalidad de libertad bajo palabra. De lo que se trata es de dictaminar si la Asamblea Legislativa puede

adoptar esa política pública de forma retroactiva sin infringir las garantías constitucionales.

En ese sentido, nos encontramos ante una controversia novel, pues involucra la interacción de tres disposiciones legales distintas: (1) la vigente al momento de los hechos delictivos; (2) la Ley Núm. 85-2022, *infra*, que estableció retroactivamente unos cómputos más favorables para cualificar a la libertad bajo palabra; y (3) la Ley Núm. 85-2024, *infra*, que, por el contrario, prohíbe la aplicación retroactiva de esos mismos cómputos a determinado grupo de personas y, además, los excluye expresamente del modo de cumplir su sentencia bajo la modalidad de libertad bajo palabra.

Ante este escenario, se requiere un análisis que trascienda lo meramente estatutario e incorpore la protección constitucional frente a leyes *ex post facto*. Como considero que se afectan derechos tanto constitucionales como estatutarios, este Tribunal debió determinar que la Sección 3 de la Ley Núm. 85-2024, *infra*, es inconstitucional. Por ello, no debe aplicarse a los peticionarios de este caso ni a ninguna otra persona en igual situación. En su lugar, corresponde mantener la aplicación de la Ley Núm. 85-2022, *infra*, la cual, de hecho, les resulta más favorable.

De ahí que, por no avalar la interpretación adoptada por este Tribunal, respetuosamente, **disiento.**

A modo de trasfondo, procedo a exponer los hechos procesales más relevantes de cada caso, con el fin de ofrecer un análisis completo de la controversia.

**I**

**A.**

Sr. Celso Romero Figueroa (CC-2025-0210)

Por hechos ocurridos el 11 de marzo de 1995, el Sr. Celso Romero Figueroa (señor Romero Figueroa) fue sentenciado el 11 de marzo de 1996 a pena de cárcel. La condena se impuso por, entre otros delitos, violación (Art. 99) y actos lascivos (Art. 105) del derogado Código Penal de 1974.[1] Luego, por hechos ocurridos el 10 de octubre de 1995, fue sentenciado nuevamente el 8 de mayo de 1996. En esta ocasión, la pena se impuso por, entre otros delitos, cometer tentativa de violación (Art. 99) y actos lascivos (Art. 105) del mismo Código Penal.[2] Como resultado, su sentencia consolidada totalizó doscientos veintitrés (223) años de reclusión.[3]

En lo aquí pertinente, el 15 de marzo de 2023, el Departamento de Corrección y Rehabilitación (DCR) emitió una *Hoja de Control sobre Liquidación de Sentencias*.[4] En ese

---

[1] Véase Apéndice del señor Romero Figueroa, Anejo I, págs. 1-5.

[2] Íd., págs. 6-10.

[3] Íd., Anejo III, pág. 12

[4] Íd., Anejo II, pág. 11.

documento, consignó que el señor Romero Figueroa cumpliría el máximo de su sentencia el 15 de enero de 2165 y que **completó el mínimo el 9 de octubre de 2010, tras la aplicación retroactiva de la Ley Núm. 85-2022.** Para esa fecha, el señor Romero Figueroa había cumplido veintisiete (27) años de prisión.

El 19 de octubre de 2023, la técnico socio-penal del DCR, asignada al caso del señor Romero Figueroa, sometió un *Informe breve para referir casos de sentencia por delito grave y menos grave ante la Junta de Libertad Bajo Palabra.*[5] **En ese informe, estableció que, en términos de tiempo, el señor Romero Figueroa advino elegible al Programa de Libertad Bajo Palabra desde el 9 de octubre de 2010.** Por consiguiente, el 1 de noviembre de 2023 remitió el referido informe a la Junta de Libertad Bajo Palabra (Junta o JLBP) para su correspondiente evaluación y determinación sobre si cumplía con los restantes requisitos para el privilegio de libertad bajo palabra.

Luego de varios trámites procesales, incluyendo la celebración de vistas de consideración, el 26 de agosto de 2024 la JLBP notificó una *Resolución.*[6] En esta, denegó el privilegio de libertad bajo palabra al señor Romero

---

[5] Íd., Anejo III, págs. 12-16. Cabe señalar que surge del documento que, el 26 de octubre de 2023 la persona encargada de la Unidad Socio Penal lo firmó tras otorgarle su "visto bueno".

[6] Íd., Anejo XI, págs. 38-41.

Figueroa por falta de jurisdicción, en virtud de la exclusión establecida en la Sección 3 de la Ley Núm. 85-2024, *infra*. La Junta razonó que, conforme a esa ley, no podía atender su caso, ya que fue convicto por violación y actos lascivos, delitos que impiden que una persona cualifique para el Programa de Libertad Bajo Palabra. Añadió que, según la hoja de liquidación de su sentencia, finalizaría de cumplir la pena por el delito de violación el 9 de octubre de 2094.

Inconforme, el 16 de septiembre de 2024 el señor Romero Figueroa presentó una solicitud de reconsideración, la cual fue rechazada de plano por la JLBP. Insatisfecho aún, el 31 de octubre de 2024 acudió al Tribunal de Apelaciones mediante una *Petición de revisión administrativa.* En síntesis, señaló que la JLBP abusó de su discreción al declararse sin jurisdicción, fundamentándose en la Ley Núm. 85-2024, *infra*, debido a que la aplicación retroactiva del mencionado estatuto resultó en la violación del principio constitucional contra las leyes *ex post facto*, en contravención al debido proceso de ley.

El 21 de febrero de 2025, el Tribunal de Apelaciones notificó una *Sentencia* en la que confirmó el dictamen de la JLBP, aunque por fundamentos distintos a los empleados por la agencia en su *Resolución*. Como punto de partida, el foro revisor intermedio aplicó la norma de autolimitación judicial y no entró en los méritos del planteamiento constitucional que se le presentó. Más bien, realizó un

análisis estatutario e interpretativo de lo siguiente: (1) la Sección 3 de la Ley Núm. 85-2024, *infra*, y su exposición de motivos; (2) el Art. 62 del Código Penal de 1974 (derogado) y su historial legislativo, por ser el vigente al momento de los hechos; y (3) el Art. 3 de la ley habilitadora de la JLBP, enmendado hasta 1995 y vigente al momento de los eventos delictivos.

A partir de ello, el foro apelativo intermedio concluyó que, aunque la Sección 3 de la Ley Núm. 85-2024, *infra*, no es clara y precisa, la intención de la Asamblea Legislativa fue excluir de los cálculos provechosos de la Ley Núm. 85-2022, *infra*, a personas como el señor Romero Figueroa, que se encuentran extinguiendo sentencias por delitos contra la indemnidad sexual. También, determinó que el señor Romero Figueroa sí puede ser considerado al privilegio de libertad bajo palabra, debido a que el estado de derecho al momento de los hechos delictivos contemplaba la posibilidad de solicitar el beneficio. Sin embargo, resolvió, además, que los cálculos a utilizarse para determinar la elegibilidad no pueden ser tampoco los de la Ley Núm. 85-2024, *infra*.

El 10 de marzo de 2025, el señor Romero Figueroa presentó una *Moción de reconsideración* ante el Tribunal de Apelaciones, la cual se rechazó mediante *Resolución* notificada el 20 de marzo de 2025.

En desacuerdo, el 11 de abril de 2025 el señor Romero Figueroa presentó una *Petición de certiorari* ante este

Tribunal, en la que nos señala la comisión de un (1) solo error:

> Erró el Tribunal de Apelaciones al confirmar la resolución en la cual la JLBP se declaró sin jurisdicción para considerar al peticionario para el privilegio de Libertad Bajo Palabra basándose en la aplicación retroactiva de la Ley 85-2024 en clara violación al debido proceso de ley y a la prohibición constitucional en contra de la aplicación de las leyes ex post facto.

El 30 de mayo de 2025, este Tribunal notificó una *Resolución* para expedir el recurso y consolidarlo, a su vez, con el caso identificado con el alfanumérico CC-2025-0219, *Antonio Alemañy Rosado v. Junta de Libertad Bajo Palabra*, el cual procedo a resumir a continuación.

**B.**

Sr. Antonio Alemañy Rosado (CC-2025-0219)

Con relación a hechos ocurridos en 1999, el Sr. Antonio Alemañy Rosado (señor Alemañy Rosado) fue sentenciado el 20 de septiembre de 1999 a pena de reclusión por, entre otros delitos, violación (Art. 99) y actos lascivos (Art. 105) del derogado Código Penal de 1974.[7] En consecuencia, su sentencia totalizó setenta (70) años de reclusión.[8]

En lo que nos concierne, el 6 de febrero de 2014, el DCR emitió una *Hoja de Control sobre Liquidación de Sentencias*, en la que estableció que el señor Alemañy Rosado

---

[7] Véase Apéndice del señor Alemañy Rosado, Anejo I, págs. 1-4.

[8] Íd., Anejo II, pág. 5.

cumpliría el máximo de su sentencia el 6 de julio de 2036 y que completaría el mínimo el 5 de septiembre de 2016.[9]

Como consecuencia, la JLBP evaluó el caso del señor Alemañy Rosado a partir del 2016. **En ese contexto, el 10 de agosto de 2022, archivada en autos al día siguiente, la Junta emitió una *Resolución* en la que subrayó que adquirió jurisdicción sobre el caso del señor Alemañy Rosado el 21 de agosto de 2016.**[10] Pese a ello, determinó que, ante la necesidad de que continuara con los programas y ofertas de rehabilitación que ofrecía el DCR, este carecía de las herramientas necesarias para integrarse a la libre comunidad. Asimismo, expresó que no contaba con un plan de salida debidamente estructurado y viable. Por estas razones, concluyó que no era merecedor del privilegio de libertad bajo palabra en ese momento.[11] Finalmente, precisó que "[e]ste caso volverá a ser considerado para el mes de julio de 2023."[12]

Así, el 27 de noviembre de 2023 la JLBP emitió una nueva *Resolución*, la cual notificó el 6 de diciembre de 2023.[13] En

---

[9] Íd.

[10] Al respecto, expresamente consignó "[l]a Junta de Libertad Bajo Palabra adquirió jurisdicción sobre su caso el 21 de agosto de 2016." Íd., Anejo III, pág. 6.

[11] Íd., págs. 6-9.

[12] Íd., pág. 8.

[13] Íd., Anejo IV, págs. 10-11.

esta, mencionó que evaluó el caso del señor Alemañy Rosado en julio de 2023. Luego, detalló una lista de información y documentos que no obraban en el expediente administrativo y que eran necesarios para tomar una determinación final. Por lo tanto, ordenó al DCR remitir la documentación requerida, de manera que el caso pudiera ser considerado en su totalidad, ya fuera una vez recibida la información solicitada o en marzo de 2024, lo que ocurriera primero.

El 1 de abril de 2024, notificada el 23 de abril de 2024, la JLBP emitió una *Resolución* en la que reiteró lo anterior, debido a la continua falta de determinados documentos en el expediente administrativo necesarios para tomar una decisión final respecto a la solicitud de libertad bajo palabra del señor Alemañy Rosado.[14] De igual forma, indicó que reconsideraría el caso una vez recibida la documentación solicitada o en junio de 2024, lo que ocurriera primero.

El 7 de noviembre de 2024, notificada el 2 de diciembre de 2024, la JLBP emitió una *Resolución*.[15] A través de esta, reiteró que el 21 de agosto de 2016 el señor Alemañy Rosado había cumplido el mínimo de su sentencia y que, por tal motivo, el DCR le refirió el caso para su consideración. No obstante, determinó que carecía de jurisdicción para atender su solicitud, conforme a la exclusión establecida en la

---

[14] Íd., Anejo V, págs. 12-14.

[15] Íd., Anejo VII, págs. 20-23.

Sección 3 de la Ley Núm. 85-2024, *infra*. La Junta fundamentó que, de acuerdo con esa ley, el señor Alemañy Rosado había sido convicto por violación y actos lascivos, delitos que expresamente excluían a las personas del Programa de Libertad Bajo Palabra y respecto de los cuales no había extinguido sus penas. Asimismo, puntualizó que, según la hoja de liquidación de su sentencia, finalizaría de cumplir la totalidad de las penas el 17 de noviembre de 2032, momento a partir del cual evaluaría su caso.

Inconforme con la determinación final, el 12 de diciembre de 2024 el señor Alemañy Rosado presentó una solicitud de reconsideración del dictamen, la cual fue rechazada de plano por la Junta.

Posteriormente, el 27 de enero de 2025, el señor Alemañy Rosado presentó una *Petición de revisión administrativa* ante el Tribunal de Apelaciones. En esencia, expuso que la JLBP abusó de su discreción al declararse sin jurisdicción al aplicar retroactivamente la Ley Núm. 85-2024, *infra*, y que, con este proceder, se violentó el principio constitucional contra leyes *ex post facto.*

El 24 de febrero de 2025, el Tribunal de Apelaciones dictó una *Sentencia* para confirmar el dictamen emitido por la JLBP. En resumen, concluyó que la Ley Núm. 85-2024, *infra*, no incidió sobre la protección contra leyes *ex post facto*, ya que no le eliminó al señor Alemañy Rosado la posibilidad de ser considerado, en su momento, para el programa de

libertad bajo palabra, sino que le eliminó la posibilidad de beneficiarse de los cálculos más provechosos de la Ley Núm. 85-2022. En ese extremo, y en apoyo a su dictamen, el foro intermedio hizo referencia al análisis que realizó en su *Sentencia* sobre el caso del señor Romero Figueroa (KLRA202400616). Ante ello, resolvió que la JLBP actuó correctamente al declararse sin jurisdicción, debido a que la Ley Núm. 85-2024, *infra*, no le es aplicable al señor Alemañy Rosado.

El 10 de marzo de 2025, el señor Alemañy Rosado presentó una solicitud de *Reconsideración* ante el Tribunal de Apelaciones, la cual se declaró "no ha lugar" el 17 de marzo de 2025.

Así las cosas, el 16 de abril de 2025, el señor Alemañy Rosado presentó una *Petición de certiorari* ante este Tribunal en la que señaló como único error:

> Erró el Tribunal de Apelaciones al confirmar la Resolución de la Junta de Libertad Bajo Palabra mediante la cual se declaró sin jurisdicción para continuar con el proceso de consideración del peticionario para el privilegio de libertad bajo palabra aplicando retroactivamente la Ley 85 2024 y violentando así el debido proceso de ley y la prohibición constitucional que prohíbe la aplicación de las leyes *ex post facto*.

Según reseñado, el 30 de mayo de 2025, expedimos el recurso de *certiorari* y lo consolidamos con el recurso del señor Romero Figueroa.

En su oposición, el 27 de agosto de 2025, el Procurador General compareció mediante un escrito titulado *Alegato de*

*la parte recurrida.* En este, refutó los señalamientos de error planteados por los señores Romero Figueroa y Alemañy Rosado. En esencia, sostuvo que no se trata de un caso que presente un argumento constitucional plausible, ya que en ningún momento podría considerarse que la Sección 3 de la Ley Núm. 85-2024, *infra*, sea inconstitucional ni que los peticionarios tengan derecho a un remedio amparado en la Constitución de Puerto Rico. Según su interpretación, cualquier cuestión planteada puede resolverse completamente bajo un análisis estatutario.

Ante este escenario, este Tribunal concluye que la cláusula de reserva incluida en la Ley Núm. 85-2024, *infra*, constituye una limitación válida a la retroactividad favorable previamente adoptada por la Asamblea Legislativa en la Ley Núm. 85-2022, *infra*. Al no estar de acuerdo, disiento, no sin antes exponer el marco jurídico que sustenta mi postura, el cual comprende un análisis tanto constitucional como estatutario.

**II**

**A.**

La Sección 19 del Artículo VI de la Constitución de Puerto Rico establece como política pública que el Estado deberá "...reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su

rehabilitación moral y social". Art. VI, Sec. 19, Const. P.R., LPRA, Tomo 1. En cumplimiento de este mandato constitucional, el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA, Ap. XVIII, Art. 2, fija como objetivo administrar un sistema correccional integrado de seguridad, así como implementar enfoques que permitan un tratamiento individualizado más eficaz, mediante la creación o expansión de programas de rehabilitación en la comunidad.

En concordancia con la creación de programas de rehabilitación, la Ley de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 22 de julio de 1974 (Ley Núm. 118-1974), 4 LPRA sec. 1501 *et seq.,* creó la Junta de Libertad bajo Palabra (Junta o JLBP) como un organismo adscrito al Departamento de Corrección y Rehabilitación. El referido estatuto le confirió a la JLBP el poder de decretar la libertad bajo palabra a cualquier persona elegible recluida en una institución penal de Puerto Rico. Art. 3 de la Ley Núm. 118-1974, 4 LPRA sec. 1503; *Toro Ruiz v. J.L.B.P. y otros,* 134 DPR 161, 166 (1993).

Específicamente, la Junta tiene la autoridad de conceder a la persona que cualifique el privilegio de cumplir parte de su condena en libertad bajo palabra, es decir, fuera de una institución penal. *Benítez Nieves v. ELA et al.,* 202 DPR 818, 835 (2019) (Op. disidente del Juez Asociado señor Estrella Martínez); *Quiles v. Del*

*Valle*, 167 DPR 458, 475 (2006); *Pueblo v. Negrón Caldero*, 157 DPR 413, 417-418 (2002). Esta libertad bajo palabra se otorgará a la persona confinada que satisfaga ciertos criterios personales y de conducta, sujeto al mejor interés de la sociedad y a que tales medidas logren su rehabilitación. *Rivera Beltrán v. J.L.B.P.*, 169 DPR 903, 905 (2007) (Sentencia). Al conceder el privilegio, la JLBP puede imponer las condiciones que estime necesarias. Art. 3 de la Ley Núm. 118-1974, *supra*. Así, la persona liberada bajo palabra tendrá una libertad cualificada. *Quiles v. Del Valle*, *supra*, pág. 475; *Maldonado Elías v. González Rivera,* 118 DPR 260, 265 (1987).

**B.**

En cuanto a la controversia de autos, la Ley Núm. 118-1974 ha sido objeto de múltiples enmiendas dirigidas a delimitar la facultad y las responsabilidades de la JLBP en el ejercicio de su discreción. En ese contexto, la Asamblea Legislativa promulgó la Ley Núm. 85 de 11 de octubre de 2022 (Ley Núm. 85-2022), con el propósito de ampliar –bajo un enfoque justo, retributivo y rehabilitador– el número de personas confinadas que podrían solicitar el beneficio de libertad bajo palabra. Véase Exposición de Motivos de la Ley Núm. 85-2022, *supra*.

A tal efecto, mediante la Ley Núm. 85-2022 se enmendó el Art. 3 de la Ley Núm. 118-1974, *supra*, así como el Art.

308 del Código Penal de 2012, 33 LPRA sec. 5416. En términos generales, las enmiendas establecieron cálculos más provechosos para que las personas recluidas en la cárcel pudieran acceder al programa de la libertad bajo palabra, en conformidad con los delitos cometidos y las penas impuestas. Precisamente, el Art. 3 de la Ley Núm. 118-1974 quedó enmendado del modo siguiente:

> La Junta de Libertad Bajo Palabra tendrá la siguiente autoridad, poderes y deberes:
>
> […]
>
> Podrá así mismo decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico que haya sido convicta conforme a las disposiciones de la Ley 146-2012, conocida como 'Código Penal de Puerto Rico de 2012' **al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto** o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años. […]. (Negrillas suplidas). Art. 3 de la Ley Núm. 118-1974, *supra*.

Similarmente, el Art. 308 del Código Penal de 2012 quedó enmendado de la forma siguiente:

> Artículo 308.- Términos para cualificar para consideración de la Junta de Libertad bajo Palabra.
>
> Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la

> Junta de Libertad Bajo Palabra **al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto** o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años. […]. (Negrillas suplidas). Art. 308 del Código Penal de 2012, *supra*.

De este modo, prácticamente toda persona convicta podía ser considerada por la JLBP al cumplir el setenta y cinco por ciento (75%) de su condena, que nunca excedería de quince (15) años, respetando los límites establecidos para menores y para quienes fueron sentenciados por asesinato en primer grado, aunque esto último no resulta relevante para la controversia de autos, así como otras condiciones.

Entonces, estas modificaciones tenían aplicación retroactiva, independientemente del código penal o la ley especial vigente al momento en que se cometieron los hechos delictivos que dieron lugar a la sentencia, siempre que su aplicación resultara favorable para la persona confinada. En particular, la normativa disponía lo siguiente:

> Sección 3.- **Esa ley aplicará de manera retroactiva, independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada.** […]. (Negrillas suplidas). Sección 3 de la Ley Núm. 85-2022, *supra*.

Como se puede observar, la Ley Núm. 85-2022 modificó el estado de derecho respecto al cómputo que realiza el DCR y la JLBP para determinar el cumplimiento del mínimo de sentencia requerido a los fines de acceder al beneficio de libertad bajo palabra. **Al ser más favorable y contar con aplicación retroactiva, esta ley permitió que personas convictas con sentencias excesivamente largas tuvieran la oportunidad de ser consideradas para ese beneficio en un plazo menos extenso.**

### C.

Más tarde, la Asamblea Legislativa promulgó la Ley Núm. 85 de 28 de mayo de 2024 (Ley Núm. 85-2024), mediante la cual enmendó el Art. 3 de la Ley Núm. 118-1974, *supra*, y el Art. 308 del Código Penal de 2012, *supra*. La finalidad de esta enmienda fue disponer que las personas convictas por delitos sexuales, secuestro o pornografía infantil — incluyendo todas sus modalidades y tentativas— **no podrán beneficiarse del privilegio de libertad bajo palabra**, sin importar cuándo ocurrieron los hechos ni bajo qué código penal o ley especial fueron sentenciadas. Asimismo, se estableció que los cálculos favorables previstos en la Ley Núm. 85-2022, *supra*, no se aplicarían retroactivamente a quienes fueron condenados por estos delitos ni se tendrían en cuenta para el cálculo de su sentencia. Véase Exposición de Motivos de la Ley Núm. 85-2024, *supra*.

En concreto, el referido estatuto consignó expresamente lo siguiente en su Sección 3:

> Sección 3.-Cláusula de Exclusión de Jurisdicción de la Junta de Libertad Bajo Palabra. **La Junta no tendrá jurisdicción para atender los casos de las personas convictas por los delitos de violación, actos lascivos,** sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, **no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.**
>
> **La Ley 85-2022 no aplicará retroactivamente a las personas convictas por estas actuaciones delictivas,** conforme a la clara intención de la Decimonovena Asamblea Legislativa de no extender este privilegio a los ofensores de la ley descritos en el párrafo anterior.
>
> **La Ley 85-2022 no surtirá efecto en el cálculo de la sentencia de las personas convictas por los delitos de** agresión sexual en todas sus modalidades, agresión sexual conyugal, **violación, actos lascivos,** sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, **indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012.**
>
> Los participantes que ya estén disfrutando del privilegio de libertad bajo palabra por la comisión de los delitos dispuestos en esta Ley y que sean revocados con posterioridad a su aprobación, no se les concederá nuevamente este privilegio.
>
> **Las personas que al momento de la aprobación de esta Ley estén referidas bajo la consideración de la Junta de Libertad Bajo Palabra sin que haya una determinación final, no cualificarán para este privilegio, indistintamente de la etapa procesal en que se encuentre la referida**

**solicitud.** (Negrillas suplidas). Ley Núm. 85-2024, *supra*.

En la práctica, esto provocó que la Junta denegara solicitudes que ya estaban en evaluación al momento de aprobarse la Ley Núm. 85-2024, *supra*, bajo el fundamento de falta de jurisdicción. A su vez, generó múltiples planteamientos de que tal exclusión cambió de forma adversa la manera en que una persona que cometió los delitos mencionados en el precitado estatuto puede cumplir su pena, y que, por ello, se viola la protección constitucional contra leyes *ex post facto*. **Precisamente, los dos casos objeto de nuestro análisis ilustran ese escenario.**

**D.**

En la Constitución de Puerto Rico se prohíbe terminantemente la aprobación de leyes *ex post facto*. Art. II, Sec. 12, Const. P.R., LPRA, Tomo 1. Esta cláusula fue importada de la Constitución federal, pues igual prohibición se establece en el Art. I, Sección 9 de la Constitución de EE. UU., LPRA Tomo 1. J.M. Farinacci Fernós, *La carta de derechos*, 1ª ed., San Juan, Editorial Universidad Interamericana de Puerto Rico, 2021, pág. 259. De igual manera, este principio se encuentra recogido en el Art. 4 del Código Penal de 2012, 33 LPRA sec. 5004, que prescribe que "[l]a ley penal aplicable es la vigente al momento de la comisión de los hechos".

Esta prohibición constitucional, en su sentido literal, implica una limitación significativa al poder punitivo del Estado, ya que impide que los ciudadanos sean castigados por conductas criminalizadas posteriormente a los hechos imputados. *Pueblo v. Ferrer Maldonado*, 201 DPR 974, 1004 (2019) (Op. disidente del Juez Asociado señor Estrella Martínez); L.E. Chiesa Aponte, *Derecho penal sustantivo*, San Juan, Pubs. JTS, 2007, pág. 16. Así, se busca que la ciudadanía reciba una notificación adecuada (*fair* warning) de cuál conducta está prohibida y a qué consecuencias penales se exponen si incurren en ella. *González Fuentes v. ELA*, 167 DPR 400, 408 (2006). Igualmente, se intenta garantizar que el poder coercitivo del Estado no sea utilizado arbitraria o vengativamente, y que el efecto de una sanción penal sea únicamente disuasivo para un potencial ofensor. Íd.; *Weaver v. Graham,* 450 US 24 (1981).

En atención a lo anterior, la prohibición constitucional contra leyes *ex post facto* es aplicable cuando un estatuto penal: (1) cobra vigencia luego de los hechos delictivos imputados o cometidos; y (2) posiciona a la persona afectada en una situación desfavorable o perjudicial en comparación con el estado de derecho que estaba vigente al cometerse los hechos delictivos. *Pueblo v. Ferrer Maldonado*, *supra*, pág. 1005, citando a L.E. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y*

*Estados Unidos*, Colombia, Ed. Forum, 1992, Vol. II, pág. 549.

Al aludir a una ley *ex post facto* nos referimos a la aplicación retroactiva de una ley que agrava para el acusado su relación con el delito, la oportunidad de defenderse y la forma de cumplir una sentencia o su extensión. *Pueblo v. Negrón Rivera*, 183 DPR 271, 305 (2011) (Voto disidente del Juez Asociado señor Estrella Martínez). Véase, también, L.E. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, *op. cit.*, págs. 545-549. Adviértase que la protección incluye la forma de cumplir una sentencia.

**Entre las leyes *ex post facto* se incluyen todos los estatutos que, ya sea en cuanto al delito o sus consecuencias, alteren la situación del acusado en su perjuicio.** D. Nevares-Muñiz, *Código Penal de Puerto Rico*, San Juan, Ed. Instituto para el Desarrollo del Derecho, 2015, pág. 8. Por consiguiente, esta protección constitucional contra leyes *ex post facto* se activa cuando se pretende aplicar una ley penal de forma retroactiva que, al mismo tiempo, es más nociva para la persona acusada o convicta que la ley vigente cuando cometió el acto o en la forma de cumplir sus sentencias. *González Fuentes v. ELA*, *supra*, pág. 408-409; L.E. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, *op. cit.*, págs. 545-549.

En la consideración de esta disposición constitucional, este foro ha señalado cuatro (4) tipos de leyes *ex post facto* como aquellas que:

> (1) criminalizan y castigan un acto que al ser realizado no era delito; (2) agravan un delito o lo hacen mayor de lo que era al momento de ser cometido; (3) **alteran el castigo imponiendo una pena mayor que la fijada para el delito al momento de ser cometido,** y (4) alteran las reglas de evidencia exigiendo menos prueba que la requerida por ley al momento de la comisión del delito para castigar al acusado o reduciendo el *quantum* de evidencia necesario para encontrarlo culpable. (Negrillas suplidas). Íd., pág. 408. Véanse también *Pueblo en interés del menor F.R.F.*, 133 DPR 172 (1993); *Fernández v. Rivera, Jefe del Presidio*, 70 DPR 900 (1949).

A manera de síntesis, se prohíbe la ley que proscribe lo que antes era permitido, eleva la gravedad del delito, aumenta la potencial sanción penal, el modo de ejecutarla, o requiere prueba inferior para probar un delito. J.M. Farinacci Fernós, *supra*, págs. 260-261; L.E. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, *op. cit.*, págs. 545-549.

Además, en nuestro camino interpretativo, hemos expresado que también son leyes *ex post facto* aquellas que eliminan retroactivamente las bonificaciones por buen comportamiento que hayan estado vigentes al momento en que la persona realizó la conducta delictiva. *González Fuentes v. ELA*, *supra*, pág. 409; *Lynce v. Mathis*, 519 US 433 (1997). **Igual expresión hicimos con leyes que excluyen a cierto grupo de convictos de la posibilidad de ser**

**elegibles para la concesión de libertad bajo palabra o bajo supervisión electrónica.** *González Fuentes v. ELA*, *supra*, pág. 409; *U.S. v. Paskow*, 11 F.3d 873 (9no Cir. 1993). Véase también *Garner v. Jones*, 529 US 244 (2000). **Esto, pues la eliminación retroactiva de esos beneficios potencialmente alarga el término de reclusión que la persona convicta tendrá que cumplir.** *González Fuentes v. ELA*, *supra*, pág. 409.

E.

La anterior prohibición constitucional contra leyes *ex post facto* en nada impide la aplicación retrospectiva de una ley penal posterior que sea **más favorable** para la persona acusada que la vigente al momento de la comisión de los hechos. *Pueblo v. González*, 165 DPR 675, 686 (2005); L.E. Chiesa Aponte, *Derecho penal sustantivo*, *op. cit.*, pág. 16; Véase también *Pueblo v. Negrón Rivera*, *supra*, pág. 305.

Esta posibilidad fue legislada mediante el Art. 4 del Código Penal de 2012, *supra*, en cuanto se pautó que "[l]a ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito". A su vez, se establecieron las siguientes normas:

> (a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.
>
> (b) **Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una**

> **ley más benigna en cuanto a la pena o al modo de ejecutarla, se aplicará retroactivamente.**
>
> (c) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley que suprime el delito, o el Tribunal Supremo emite una decisión que despenalice el hecho, la pena quedará extinguida y la persona liberada, de estar recluida o en restricción de libertad. (Negrillas suplidas). Art. 4 del Código Penal de 2012, *supra*.

En virtud de este precepto, la nueva ley favorable puede surgir mientras se procesa al imputado, al momento de imponerle la sentencia o **durante el término en que se cumple la condena.** *Pueblo v. Torres Cruz*, 194 DPR 53, 60 (2015). Por eso, en lo pertinente, **se permite estatutariamente que aquellas leyes que mejoran la forma de cumplir una sentencia se apliquen a favor de una persona convicta.**

La razón del principio de favorabilidad responde a que resulta irracional, arbitrario y excesivo mantener un castigo que, con una acción legislativa posterior, ya no corresponde a la gravedad del delito. L.E. Chiesa Aponte, *Derecho penal sustantivo*, *op. cit.*, pág. 59. Es decir, su motivación nace de que no tiene sentido que una persona convicta siga cumpliendo las consecuencias de una ley que ha dejado de considerarse adecuada porque, para la Asamblea Legislativa, los hechos delictivos ya no son tan graves o lo son, pero en menor medida. Íd., citando a F. Muñoz Conde y M. García Arán, *Derecho Penal, Parte General*, 6ª ed., Valencia, Tirant Lo Blanch, 2004, pág.

141. Ese cambio en el valor jurídico de la nueva ley es lo que busca atender el principio de favorabilidad y, a la vez, lo que motiva su aplicación a hechos anteriores por considerarse más justo. Íd.

En el pasado, este Tribunal ha reiterado que el principio de favorabilidad se ha concebido como un acto de "gracia legislativa", cuya concesión recae enteramente en el legislador o la legisladora y, por eso, no posee el mismo carácter constitucional que la prohibición de leyes *ex post facto*. *Pueblo v. DiCristina Rexach*, 204 DPR 779, 787 (2020); *Pueblo v. Torres Cruz*, *supra*, pág. 60; *Pueblo v. González*, *supra,* pág. 684. De ahí que este Tribunal haya reconocido que la Asamblea Legislativa pueda limitar el alcance del principio de favorabilidad, establecer excepciones y ordenar la aplicación de la ley vigente al momento de la comisión del hecho delictivo, **aunque le sea menos favorable que la ley posterior, situación que no es la que nos ocupa**. *Pueblo v. DiCristina Rexach*, *supra*, pág. 787; *Pueblo v. Hernández García*, 186 DPR 656, 673 (2012); *González Fuentes v. ELA*, *supra*, pág. 418.

Ante ese cuadro, la suspicacia que han tenido algunos sectores respecto al principio de favorabilidad debió redirigirse, en esta controversia, hacia las cláusulas de reserva, dado la prohibición constitucional de las leyes *ex post facto*. Precisamente, ese el análisis integral que debió realizarse sobre la interacción de la prohibición

constitucional y la secuencia de leyes en controversia. Me explico.

### III

De entrada, la controversia central de este caso consiste en determinar si la "cláusula de reserva" contenida en la Ley Núm. 85-2024, *supra*, constituye una limitación válida a la retroactividad favorable previamente adoptada en la Ley Núm. 85-2022, *supra*, a la luz de las consecuencias jurídicas que agravan el modo de ejecutar la sentencia y en el marco de las limitaciones de la prohibición constitucional de leyes *ex post facto*.

Sobre este particular, la mayoría de los integrantes de este Tribunal realiza un análisis puramente estatutario, sin efectuar una interpretación constitucional. Con base en ello, concluye que la intención de la Asamblea Legislativa, al disponer expresamente que la Ley Núm. 85-2022 no aplicará retroactivamente a las personas convictas por determinados delitos y sus tentativas, independientemente del código penal o ley especial vigente al momento de los hechos delictivos, constituye una prerrogativa para restringir la aplicación de disposiciones favorables.

Bajo esa interpretación, este Tribunal resuelve que la cláusula de reserva consignada en la Ley Núm. 85-2024, *supra*, es válida y, por ende, justifica que los peticionarios no puedan acceder a cumplir la sentencia en

libertad bajo palabra conforme a los términos de la Ley Núm. 85-2022, *supra*, aun cuando esta última les resulte más favorable y haya generado en ellos la expectativa legítima de cualificar al programa de libertad bajo palabra.

Por esa misma línea, difiero de lo sugerido por el Procurador General de limitar el análisis a un enfoque puramente estatutario, postura que fue acogida por la mayoría de este Tribunal. En cumplimiento de nuestro deber de pautar -especialmente en un caso novel como este, en el que interactúan tres leyes distintas que alteran el derecho aplicable a los peticionarios- resulta necesario realizar una interpretación armoniosa de <u>todas</u> las garantías individuales, constitucionales y estatutarias pertinentes, tales como el debido proceso de ley, la prohibición contra leyes *ex post facto* y el principio de favorabilidad. A partir de ese marco, procedo a exponer las razones que sostienen mi disenso. Veamos.

**A.**

Si bien es cierto, como previamente señalé, que la Asamblea Legislativa puede limitar el principio de favorabilidad mediante cláusulas de reserva, en este caso nos encontramos ante la interacción de tres leyes: (1) la vigente al momento de los hechos; (2) la Ley Núm. 85-2022; y (3) la Ley Núm. 85-2024. **No se trata de la situación ordinaria en la que una ley posterior establece por sí**

**misma una limitación a su aplicación favorable prospectivamente**. Aquí, en cambio, una tercera ley —la Ley Núm. 85-2024— pretende restringir **retroactivamente** los beneficios creados por la segunda —la Ley Núm. 85-2022—, la cual, dicho sea de paso, no contenía cláusula de reserva alguna y disponía que sus disposiciones favorables se aplicarían de forma retroactiva. Como cuestión de realidad, la Ley Núm. 85-2022 mejoró la situación jurídica de los peticionarios, de manera que cualificaron para el programa de libertad bajo palabra, en términos del mínimo de sentencia que debían cumplir, razón por la cual sus casos fueron referidos a la JLBP.[16]

Además, esta disposición legal generó en ellos expectativas legítimas sobre su modo de cumplir la pena y participar, tras varios años de encarcelamiento, en un programa de rehabilitación, en consonancia con la política pública establecida en la Sección 19 del Art. VI de la Constitución de Puerto Rico. Véase Art. VI, Sec. 19, *supra.*

Por ello, estimo que no podemos limitarnos a un análisis puramente estatutario, pues considero que también existen fundamentos constitucionales para concluir que la cláusula de reserva incluida en la Ley Núm. 85-2024,

---

[16] Véase Apéndice del señor Romero Figueroa, Anejos II y III, págs. 11-16; Véase Apéndice del señor Alemañy Rosado, Anejos II y III, págs. 5-9.

*supra*, no debe aplicarse en perjuicio de los peticionarios.

A mi juicio, la protección constitucional contra leyes *ex post facto* no se limita a resguardar únicamente la situación existente al momento de los hechos delictivos. Como punto de partida, **esta protección se activa cuando la ley que se pretende aplicar retroactivamente altera la situación jurídica de la persona acusada en su perjuicio y el modo de cumplir con la sentencia.** D. Nevares-Muñiz, *supra*, pág. 8; L.E. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, *op. cit.*, págs. 545-549. Asimismo, coincido con el planteamiento de la Sociedad para Asistencia Legal en este caso, según el cual la protección constitucional también se activa cuando se pretende aplicar una ley penal de manera retroactiva y la misma le elimina derechos adquiridos por la persona.[17]

**Adviértase que, en consonancia con lo anterior, hemos expresado que son leyes *ex post facto* aquellas que excluyen a cierto grupo de personas convictas de la posibilidad de ser elegibles para la concesión de libertad bajo palabra o bajo supervisión electrónica.** *González Fuentes v. ELA*, *supra*, pág. 409; *U.S. v. Paskow*, *supra*. Véase también *Garner v. Jones*, *supra*.

---

[17] Véase Petición de *certiorari* del señor Alemañy Rosado, pág. 18.

En otras palabras, soy del criterio de que determinar inaplicable la Ley Núm. 85-2022 a los peticionarios —la cual les otorgó cálculos más favorables y los declaró elegibles para la libertad bajo palabra respecto al tiempo mínimo que debían cumplir de su sentencia— y, a la vez, revertir su situación jurídica al momento de los hechos delictivos, como sugiere la mayoría de este Tribunal, resulta incompatible con el debido proceso de ley y constituye una violación al principio constitucional contra leyes *ex post facto*. Tal como señaló la representación legal de los peticionarios, considero que un retroceso de esa magnitud solo podría llevarse a cabo por mandato constitucional.[18]

Así, al revertir al estado de derecho vigente al momento de los hechos, queda diluida la interacción entre las garantías del debido proceso de ley, la prohibición de leyes *ex post facto* y el principio de favorabilidad.

**B.**

Por otro lado, no puedo dejar de señalar lo siguiente: la cláusula de reserva no es lo único que contiene la Ley Núm. 85-2024, *supra*. Por el contrario, esta incluye una cláusula de exclusión que dispone expresamente que la JLBP "no tendrá jurisdicción para atender los casos de las personas convictas por los

---

[18] Véase *Alegato de la parte peticionaria* del señor Romero Figueroa, pág. 28.

delitos de… violación, actos lascivos", entre otros, quienes "no podrán beneficiarse del privilegio de libertad bajo palabra, indistintamente de la fecha de la comisión del acto delictivo ni del código penal o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012". Sección 3 de la Ley Núm. 85-2024, *supra*. **Esto evidencia que se trata de una ley *ex post facto*, la cual está siendo utilizada por la JLBP para declararse sin jurisdicción de manera automática en todos los casos de personas sentenciadas por delitos sexuales, secuestro o pornografía infantil, indistintamente de la fecha de la comisión de los hechos.**[19] En ese sentido, **ello abona a mi postura de que este Tribunal debió realizar un análisis constitucional y concluir que tal sección es inconstitucional.**

Cabe señalar que esta actuación reiterada de la JLBP afectó de manera particular al señor Alemañy Rosado, quien cualificó para el programa de libertad bajo palabra desde 2016. Mientras que antes —incluso previo a la vigencia de la ley favorable, la Ley Núm. 85-2022, *supra*— podía acceder al programa en función del cumplimiento del mínimo de su sentencia desde 2016, ahora la JLBP dejó de atender su caso alegando presunta falta de jurisdicción, conforme a la Sección 3 de la Ley Núm. 85-2024, *supra*. Esta

---

[19] Véase Apéndice del señor Romero Figueroa, Anejo IX, págs. 38-41; Apéndice del señor Alemañy Rosado, Anejo VII, págs. 20-23.

situación evidencia una violación tanto de su derecho al debido proceso de ley como de la protección constitucional contra leyes *ex post facto*.

Nuevamente, no se trata de apoyar o no la política pública consignada en la Sección 3 de la Ley 85-2024, *supra*. De lo que se trata es de dictaminar, como jueces y juezas, si ese ejercicio de poder puede ejercerse retroactivamente con las consecuencias jurídicas aquí descritas.

Por todas estas razones, y como bien advierte la Sociedad para Asistencia Legal, considero que se vulneran derechos tanto constitucionales como estatutarios, así como garantías individuales, por lo que este Tribunal debió haber declarado inconstitucional la Sección 3 de la Ley Núm. 85-2024, *supra*. En consecuencia, debió haber determinado que tal disposición no debe aplicarse a los peticionarios de este caso ni a ninguna otra persona en igual situación.

En su lugar, estimo que corresponde aplicar la Ley Núm. 85-2022, *supra*, la cual, de hecho, les resulta más beneficiosa y contribuye a su rehabilitación social, tal como establece su Exposición de Motivos y conforme a lo dispuesto en la Constitución de Puerto Rico.

**Así, respetuosamente, disiento.**


                              Luis F. Estrella Martínez
                                  Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Celso Romero Figueroa<br><br>    Peticionario<br><br>       v.<br><br>Junta de Libertad Bajo Palabra<br><br>    Parte Recurrida<br><br>_____<br><br>Antonio Alemañy Rosado<br><br>    Peticionario<br><br>       v.<br><br>Junta de Libertad Bajo Palabra<br><br>    Parte Recurrida | CC-2025-0210<br><br>cons. con<br><br>CC-2025-0219 |

Opinión Disidente emitida por el Juez Asociado SEÑOR COLÓN PÉREZ.

En San Juan, Puerto Rico, a 30 de marzo de 2026.

Los hechos medulares que dan margen al presente litigio no están en controversia, razón por la cual hemos decidido adoptar los mismos por referencia. En esencia, en esta ocasión estábamos llamados y llamadas a determinar si era válida, o no, cierta cláusula de reserva, incorporada mediante la Ley Núm. 85 de 28 de mayo de 2024 (en adelante, "Ley Núm. 85-2024"), con el propósito de limitar la aplicación retroactiva de los cálculos más favorables para cualificar para la consideración de la Junta de Libertad Bajo Palabra, establecidos en virtud de la Ley Núm. 85 de 11 de octubre de 2022 (en adelante, "Ley Núm. 85-2022"). A nuestro juicio, -- y contrario a lo que concluye hoy una

mayoría de mis compañeros y compañeras de estrado --, tal interrogante debió ser respondida en la negativa.

Y es que, de un análisis, cuidadoso y detenido, del historial legislativo de la Ley Núm. 85-2022, -- estatuto que enmendó, entre otras disposiciones legales, el Código Penal de Puerto Rico, 33 LPRA sec. 5001 *et seq.* (en adelante, "Código Penal") --, claramente se desprende que, en ésta, y, particularmente, en su texto original, no se incorporó una cláusula de reserva que limitase su aplicación retroactiva o que impidiese a determinado grupo de personas invocar los beneficios allí promulgados. De hecho, en el precitado estatuto, la Asamblea Legislativa expuso, -- con meridiana claridad --, lo siguiente: "**[e]sta Ley aplicará de manera retroactiva, independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada.**" (Énfasis suplido). Sec. 3 de la Ley Núm. 85-2022.

Como se puede apreciar, el texto al que hemos hecho referencia, -- entiéndase, el incluido en la Sec. 3 de la Ley Núm. 85-2022 --, guarda particular similitud con aquel que reconoce el principio de favorabilidad en el Código Penal, *supra*. Específicamente, y en lo pertinente a la controversia ante nos, el referido código, en su Art. 4, dispone lo siguiente:

> La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:

[. . .]

(b) Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o al modo de ejecutarla, se aplicará retroactivamente. [. . .] 33 LPRA sec. 5004.

En suma, en virtud del principio de favorabilidad, cuando una ley penal posterior sea más beneficiosa que aquella vigente al momento de la comisión de los hechos imputados al acusado o a la acusada, éste o ésta tendrá derecho a que sea la ley más benigna la que le aplique. *Pueblo v. González*, 165 DPR 675, 685 (2005); E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Columbia, Ed. Forum, 1992, Vol. II, pág. 568. Lo anterior así, puesto que "el principio republicano de gobierno exige la racionalidad de la acción del estado y [é]sta es afectada cuando, por la mera circunstancia de que un individuo haya cometido el mismo hecho con anterioridad a otro, se l[e] trate más rigurosamente". L.E. Chiesa Aponte, *Derecho penal sustantivo*, 2da ed., San Juan, Pubs. JTS, 2013, pág. 59 (citando a E.R. Zaffaroni, *Derecho penal: Parte general*, 2da ed., Buenos Aires, Ed. Ediar, 2002, pág. 122).

**Ahora bien, el principio de favorabilidad, como bien señala la *Opinión* mayoritaria, no es uno de rango constitucional.** *Pueblo v. González*, *supra*, pág. 686; A. Bascuñán Rodríguez, *La aplicación de la ley penal más favorable*, 69 Rev. Jur. UPR 29, 42 (2000); Chiesa Aponte, *op. cit.* **Así pues, la Asamblea Legislativa tiene la**

**prerrogativa de establecer excepciones al mismo para así limitar la aplicación retroactiva de una ley penal más beneficiosa.** *Pueblo v. González*, *supra* (citando a Bascuñán Rodríguez, *supra*). **Ello, claro está, mediante la inclusión de una cláusula de reserva a esos fines.** *Pueblo v. Torres Cruz*, 194 DPR 53, 61 (2015); *Pueblo v. González*, *supra*, pág. 702; D. Nevares-Muñiz, *Derecho penal puertorriqueño*, 7ma ed. Rev., San Juan, Inst. para el Desarrollo del Derecho, 2015, pág. 102.

**Sobre este extremo, en** *Pueblo v. Torres Cruz*, *supra*, **este Tribunal tuvo la oportunidad de examinar la aplicabilidad del principio de favorabilidad en el escenario de una ley carente de una cláusula de reserva. En aquella ocasión, establecimos que si en el lenguaje de una ley, -- al momento de su aprobación --, no se incluye una cláusula de reserva, a los fines de limitar la aplicación retroactiva de la misma, "el principio de favorabilidad opera en pleno derecho".** *Pueblo v. Torres Cruz*, *supra*, pág. 62. **Es decir, las personas que se beneficien con la aprobación de este tipo de disposición legal, a partir del momento en que se aprueba la misma, se convierten en acreedoras de un derecho adquirido de naturaleza estatutaria.**

A grandes rasgos, y en lo aquí pertinente, en el precitado caso, el Estado impugnaba cierta determinación emitida por el Tribunal de Apelaciones, mediante la cual dicho foro concluyó que procedía la aplicación del principio de favorabilidad respecto a ciertas enmiendas introducidas

al Código Penal, *supra*, entre las cuales se encontraba una reducción a la pena de reclusión por el delito de escalamiento. Evaluado el asunto, en esa ocasión razonamos que, debido a que la Asamblea Legislativa no dispuso que las referidas enmiendas serían inaplicables a quienes habían sido sentenciados previamente, -- en otras palabras, que no incluyó una cláusula de reserva al momento de adoptar las mismas --, el principio de favorabilidad era aplicable. *Pueblo v. Torres Cruz*, *supra*, pág. 68.

Asimismo, añadimos que, si se quería evitar la aplicación retroactiva de la ley que incorporó las enmiendas más favorables, no se debió esperar a que ésta fuese aprobada para luego oponerse a ello. *Pueblo v. Torres Cruz*, *supra*, pág. 69. Por consiguiente, señalamos que el momento que tuvo el Departamento de Justicia para oponerse a la aplicación del principio de favorabilidad había sido durante el trámite legislativo. *Pueblo v. Torres Cruz*, *supra*, pág. 68.

**Así las cosas, y teniendo presente lo previamente resuelto por este Tribunal en *Pueblo v. Torres Cruz*, *supra*, somos del criterio que, para que una cláusula de reserva sea válida y tenga el efecto de actuar como una excepción al principio de favorabilidad, -- y, así limitar la aplicación retroactiva de una ley posterior más benigna, independientemente de cuál sea el beneficio provisto por ésta --, la misma tiene que ser incluida, oportunamente, en el texto de la ley cuyos beneficios se buscan limitar. En ese sentido, y ya más en lo relacionado a los asuntos ante**

**nuestra consideración, entendemos que el momento que tenía la Asamblea Legislativa para considerar la aplicación retroactiva de la Ley Núm. 85-2022 lo fue durante el trámite legislativo de ésta, entiéndase, previo a la aprobación de la misma, no después de así haberlo hecho.**

No podía, entonces, a nuestro juicio, la Asamblea Legislativa, mediante una ley posterior, -- a saber, la Ley Núm. 85-2024 --, enmendar la Ley Núm. 85-2022 a los fines de incorporarle una cláusula de reserva y esperar que ésta surtiese efectos retroactivos. Ello, a todas luces, creó un disloque estatutario que este Tribunal no debió avalar.

Los beneficios de la Ley Núm. 85-2022 debieron ser extensivos a los Sres. Celso Romero Figueroa y Antonio Alemañy Rosado. Lo anterior, por sí solo, era suficiente para disponer del presente asunto.

Es, pues, por los fundamentos antes expuestos, que disentimos de lo hoy resuelto por una mayoría de mis compañeros y compañeras de estrado.


                                    Ángel Colón Pérez
                                     Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Celso Romero Figueroa<br><br>Peticionario<br><br>v.<br><br>Junta de Libertad Bajo Palabra<br><br>Recurrida<br>———————————————<br>Antonio Alemañy Rosado<br><br>Peticionario<br><br>v.<br><br>Junta de Libertad Bajo Palabra<br><br>Recurrida | CC-2025-0210<br>cons. con<br>CC-2025-0219 | Certiorari |

Opinión disidente emitida por la Jueza Asociada Rivera Pérez.

En San Juan, Puerto Rico a 30 de marzo de 2026.

La Opinión mayoritaria no aplica la Ley Núm. 85-2024, *infra*, tal cual fue legislada, amparándose de manera errada en la doctrina de autolimitación judicial. **"El lenguaje claro y explícito de un estatuto** no se debe tergiversar, mucho menos malinterpretar o sustituir." (Negrilla suplida) *Bomberos Unidos v. Cuerpo Bomberos et al.*, 180 DPR 723, 749 (2011).

Por consiguiente, el efecto de aplicar la Ley Núm. 85-2024, *infra*, a los peticionarios es **excluirlos** permanentemente de cualificar para ser considerados y

evaluados para el beneficio de libertad bajo palabra. Esta exclusión opera bajo la Ley Núm. 85-2024 a pesar de que los peticionarios habían adquirido el derecho con anterioridad a la ley impugnada. Por lo tanto, imperaba y era necesario, en este caso, adentrarnos en el análisis constitucional sobre leyes *ex post facto*, y no limitarnos a un análisis estatutario como pretende la mayoría al aplicar la doctrina de evitación constitucional.

A su vez, el razonamiento expuesto en la Opinión Mayoritaria avala la determinación de declarar válida una cláusula de reserva de aplicación retroactiva, la cual es **más punitiva** que la legislación anterior que pretende alterar.

De umbral, una cláusula de reserva es una limitación al principio de favorabilidad que rige sobre nuestras leyes penales. Su función **es impedir la aplicación retroactiva de una ley más benigna**, de modo que, esta opere únicamente de forma prospectiva. Por tanto, no estamos ante una cláusula de reserva válida, sino ante una enmienda ordinaria de ley. Dicha enmienda, como cualquier otra, está limitada en su aplicación retroactiva en tanto y cuanto **no incida sobre los derechos adquiridos y constitucionales de los peticionarios.**

Por las razones antes mencionadas, respetuosamente **disiento del curso de acción tomado por la mayoría.**

**I.**

Los hechos que dieron lugar a los recursos ante nos están detallados en la Opinión mayoritaria los cuales no son necesarios pormenorizar. No obstante, entiendo meritorio resaltar varios aspectos del trámite administrativo.

En el caso del Sr. Celso Romero Figueroa (peticionario) surge que fue sentenciado en el año 1996 y extingue una pena de doscientos veintitrés (223) años por la comisión de varios delitos del Código Penal de 1974 (derogado), entre ellos, actos lascivos, violación, tentativa de violación y escalamiento agravado, entre otros.

En este caso en particular, luego de veintisiete (27) años cumplidos, el 15 de marzo de 2023, **el Departamento de Corrección y Rehabilitación (DCR) lo evaluó y le aplicó la Ley Núm. 85-2022,** *infra*. A raíz de esa evaluación, el DCR emitió una Hoja de Control Sobre Liquidación de Sentencia en la cual, al aplicarle los cálculos más favorables de la Ley Núm. 85-2022, **estableció que para el 9 de octubre de 2010 había cumplido el mínimo de sentencia requerido para ser evaluado por la Junta de Libertad Bajo Palabra (JLBP).**[1]

Así las cosas, el 11 de diciembre de 2023, **la JLBP emitió una citación para vista de consideración** para el privilegio de libertad bajo palabra. Luego de varios trámites procesales, **la JLBP finalmente emitió una Resolución el 26 de agosto de 2024, donde se declaró sin jurisdicción**

---

[1] Véase, Apéndice del recurso CC-2025-0210, Anejo III, pág. 12-16.

para atender el caso del señor Celso Romero Figueroa por entender que la Ley Núm. 85-2024, *infra*, les privó de atender todos los casos de personas convictas por delitos de agresión sexual, incluyendo los delitos de violación y actos lascivos.

Estando en desacuerdo con el dictamen de la JLBP, el 16 de septiembre de 2024, el señor Celso Romero Figueroa presentó una Moción de Reconsideración de Concesión de Libertad Bajo Palabra, que fue rechazada de plano.

De otra parte, el Sr. Antonio Alemañy Rosado (peticionario) el cual fue sentenciado en el año 1999 y extingue una sentencia de setenta (70) años por la comisión de varios delitos del Código Penal de 1974 (derogado) entre ellos, actos lascivos, violación y agresión agravada, entre otros.

Al igual que en el caso anterior, el DCR emitió una Hoja de Control Sobre Liquidación de Sentencia en la cual se indicó que para el 25 de diciembre de 2018 había cumplido con el mínimo de sentencia requerido para ser evaluado por la JLBP, y el máximo el 25 de octubre de 2038. No obstante, el 10 de agosto de 2022, mediante *Resolución*, la JLBP determinó que el señor Alemañy Rosado no era merecedor del privilegio y dispuso que el caso podría volver a ser considerado en el mes de julio de 2023.

Posteriormente, el 7 de noviembre de 2024, notificada el 2 de diciembre de 2024, la JLBP emitió una Resolución en la que se declaró sin jurisdicción para atender el caso del

peticionario, conforme a lo dispuesto en la Ley Núm. 85-2024, *infra*. En su resolución, la JLBP dispuso lo siguiente:[2]

> "Según surge de la Hoja de Control del Sr. Alemañy Rosado sobre liquidación de sentencias actualizada del 16 de septiembre de 2024, remitida por el DCR, el peticionario cumple el máximo de las penas de los delitos excluidos es el 17 de noviembre de 2032. Por lo cual, en virtud de lo dispuesto en la Sección 3 de la Ley Núm. 85-2024, la Junta carece de jurisdicción para atender el caso."

El 4 de diciembre de 2024, el señor Alemañy Rosado, presentó una Moción de Reconsideración ante la JLBP, en la cual alegó que, la aplicación de lo dispuesto en la Ley Núm. 85-2024, *infra*, violentaba la prohibición constitucional contra leyes ex post facto y el debido proceso de ley. El 12 de diciembre de 2024 fue declarada "no ha lugar".

Inconformes, ambos peticionarios con las resoluciones emitidas por la JLBP presentaron sus respectivos recursos de revisión administrativa ante el Tribunal de Apelaciones, los cuales fueron consolidados. En apretada síntesis, el foro intermedio dictó Sentencia en la cual razonó que, bajo la doctrina de autolimitación judicial, no era necesario entrar en los méritos de un análisis sobre leyes *ex post facto*, debido a que era posible resolver la controversia bajo una interpretación razonable de la ley cuestionada. Además, resolvió que **la JLBP sí tenía jurisdicción para resolver el caso en los méritos, debido a que la ley aplicable era la vigente al momento de los hechos delictivos, y que dicha ley**

---

[2] Véase, Resolución de la JLBP del señor Alemañy Rosado (7 de noviembre de 2024). Apéndice del recurso CC-2025-0219, Anejo pág. 21.

**no prohíbe al peticionario solicitar la libertad bajo palabra.** Mientras, por otro lado, en su dictamen, confirmó lo resuelto por la JLBP al resolver que la agencia actuó conforme a derecho al declararse sin jurisdicción, **toda vez que la aplicación retroactiva de la Ley 85-2024**, *infra*, **impide que los peticionarios se beneficien de los términos favorables que dispone la Ley Núm. 85-2022,** *infra*.

En el caso del señor Romero Figueroa, específicamente se reconoció que la Ley Núm. 85-2024, contiene en sus primeras dos secciones enmiendas al Código Penal que conllevan la exclusión de los peticionarios del derecho a cualificar para el privilegio libertad bajo palabra, y que estas **no pueden aplicarse, ya que al momento de la comisión de los delitos este tenía derecho a cualificar para ser evaluado ante la JLBP.** En cambio, en el caso del señor Alemañy Rosado, el foro intermedio resolvió que la referida ley **no le elimina la posibilidad** de ser considerado para el privilegio de libertad bajo palabra, **solo le elimina la posibilidad de beneficiarse de los términos** de la Ley Núm. 85-2022.

Consecuentemente, ambos dictámenes concluyen que la JLBP actuó conforme a derecho al declararse sin jurisdicción **toda vez que la aplicación retroactiva de la Ley 85-2024,** *infra*, **impide que los peticionarios se beneficien de los términos favorables que dispone la Ley Núm. 85-2022,** *infra*.

Aunque, como indicamos, difieren en su interpretación de la Ley Núm. 85-2024, *infra*.

Inconformes, ambos peticionarios acudieron ante esta Curia mediante sus respectivos recursos de Certiorari,[3] y plantearon que el foro intermedio cometió el siguiente error:

> Erró el Tribunal de Apelaciones al confirmar la resolución en la cual la JLBP se declaró sin jurisdicción para considerar al peticionario para el privilegio de Libertad Bajo Palabra basándose en la aplicación retroactiva de la Ley 85-2024 en clara violación al debido proceso de ley y a la prohibición constitucional en contra de la aplicación de las leyes ex post facto.

Evaluados los argumentos de los peticionarios, así como los de la JLBP, procedo a exponer las razones y fundamentos de derecho que motivan la posición disidente.

## II.

### A. La doctrina *Ex post facto*.

La Constitución de los Estados Unidos en su Art. 1, Sección 10, así como, el Art. II, Sec. 12, de la Constitución del Estado Libre Asociado de Puerto Rico, contienen una prohibición expresa contra las leyes *ex post facto*. Esta "prohíbe al Congreso y a los Estados promulgar cualquier ley que imponga un castigo por un acto que no era punible en el momento en que fue cometido; o que imponga un castigo adicional al entonces prescrito". Véase *Weaver v. Graham*, 450 US 24, 28 (1981). Véase, además, *Cummings v. Missouri*, 71 US 277, 325-326 (1867).

---

[3] El señor Romero Figueroa presentó su recurso el 11 de abril de 2025 y el señor Alemañy Rosado el 16 de abril de 2025.

Por lo tanto, **para que una ley penal o criminal sea *ex post facto*, debe ser retroactiva, es decir, debe aplicarse a hechos ocurridos antes de su promulgación, y debe perjudicar al infractor afectado por ella.** *Lindsey v. Washington*, 301 US 397, 401 (1937). **No es necesario que afecte un derecho adquirido.** Incluso, si una ley simplemente modifica disposiciones penales concedidas por la gracia del legislador, viola la Cláusula de *Ex Post Facto* si es tanto retroactiva como más gravosa que la ley vigente en la fecha del delito. Véase *Weaver v. Graham*, supra, págs. 28-31.[4]

El Tribunal Supremo de los Estados Unidos, así como las Cortes Supremas de los distintos estados han resuelto **que la eliminación retroactiva del derecho a libertad bajo palabra constituye una violación a la cláusula constitucional contra la prohibición de leyes *ex post facto*,** dado que el efecto neto contra la persona sentenciada es imponer un castigo más oneroso. Véase *State ex rel. Singh v. Kemper*, 883 N.W.2d 86 (2016).

> In *Weaver*, 450 U.S. at 26{1981}, the court determined that a change in Florida's "gain time for good conduct" statute extended the time that inmates were required to spend in prison. Similar to the statutory change at issue in this case, the

---

[4] "The presence or absence of an affirmative, enforceable right is not relevant, however, to the ex post facto prohibition, which forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred. Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." Íd., pags. 30-31.

Florida law "reduce[d] the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks." *Id.* at 33. The *Weaver* court explained that "this reduction in gain-time accumulation lengthens the period that someone in petitioner's position must spend in prison." Id.

Under both Wisconsin and United States Supreme Court precedent, **a retroactive change in the law that increases the length of an inmate's sentence violates the ex post facto clauses.** (Negrillas suplidas). Íd. 98-99.

En suma, "resulta incompatible con la protección contra leyes *ex post facto* aplicar retroactivamente una ley que elimina a cierto grupo de convictos la posibilidad de ser elegibles para la concesión de libertad bajo palabra o bajo supervisión electrónica. *U.S. v. Paskow*, 11 F.3d 873 (9no Cir. 1993). Véase, además, I *LaFave's, Substantive Criminal Law 2d* Sec. 2.4 (2003). Ello se debe a que la eliminación retroactiva de esos beneficios tiene el potencial de alargar el término que el convicto habrá de cumplir en reclusión." *González v. ELA*, 167 DPR 400, 409 (2006).

Ahora bien, **¿cuál es el momento preciso contra el cual se debería interponer la nueva legislación en un análisis de prohibición *ex post facto*?** La respuesta a esta controversia la encontramos en varios casos resueltos por Tribunal Supremo de los Estados Unidos. Veamos.

En *Peugh v. United States*, 569 U.S. 530, 533 (2013), se decidió que, para fines de un análisis *ex post facto*, la ley aplicable es **la vigente al momento de la comisión del delito, y no puede aplicarse una ley promulgada con posterioridad si**

**esta crea un riesgo significativo de aumentar el castigo, incluso cuando la nueva legislación ocurra antes de dictarse la sentencia.**

> [The Ex Post Facto Clause is violated] when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense. Íd., pág. 533.

Recientemente, en una decisión unánime, la Corte Suprema de los Estados Unidos en *Ellingburg v. United States*, 607 US __, 146 S.Ct. 564, (2026), reiteró la temporalidad del análisis clásico sobre leyes *ex post facto* y añadió que una ley puede agravar la pena incluso cuando la misma sea de naturaleza restitutiva exclusivamente. En consecuencia, si un estatuto promulgado con posterioridad a la comisión del delito aumenta o impone una obligación monetaria como consecuencia de los actos delictivos, su aplicación retroactiva queda vedada por la Cláusula contra leyes *ex post facto*.

## B. El principio de favorabilidad

El principio de favorabilidad fue insertado por primera vez en el Art. 4 del Código Penal de 1974 (derogado), 33 LPRA sec. 3004. Dicho principio estableció que, "si una ley penal, cuyos efectos resultan en un tratamiento más favorable para una persona acusada, se aprueba con posterioridad a la comisión de los hechos delictivos, ésta se debe aplicar

retroactivamente, de modo que el acusado disfrute de sus beneficios". Véase *Pueblo v. Dicristina Rexach*, 204 DPR 779, 786 (2020).[5]

Actualmente, este principio se encuentra en el Art. 4 del Código Penal de 2012, 33 LPRA sec. 5004, el cual dispone que:

> La ley penal aplicable es la vigente al momento de la comisión de los hechos.
>
> La ley penal tiene efecto retroactivo en lo que favorezca a la persona imputada de delito. En consecuencia, se aplican las siguientes normas:
>
> (a) Si la ley vigente al tiempo de cometerse el delito es distinta de la que exista al procesar al imputado o al imponerle la sentencia, se aplicará siempre la ley más benigna.
> (b) **Si durante el término en que la persona está cumpliendo la sentencia entra en vigor una ley más benigna en cuanto a la pena o al modo de ejecutarla, se aplicará retroactivamente.**
> (c) […] (Negrilla suplida).

Además, hemos reiterado que el principio de favorabilidad "*no tiene rango constitucional*, quedando la aplicación retroactiva de las leyes penales que favorezcan al acusado **dentro de la *prerrogativa total* del legislador.** Es por ello que el principio de favorabilidad corresponde a un acto de *gracia legislativa* cuyo origen es *puramente estatutario*". *Pueblo v. González*, 165 DPR 675, 686 (2005). (Negrillas suplidas e itálicas en el original)

> De esta forma, [el legislador] tiene la facultad de establecer excepciones a dicho principio y **ordenar la aplicación prospectiva** de la ley

---

[5] Véase, además, *Pueblo v. Torres Cruz*, 194 DPR 53 (2015).

vigente al momento de la comisión del hecho punible, aunque [é]sta sea menos favorable para [el acusado] que la ley vigente al momento de la condena. (Negrillas suplida). *Pueblo v. Dicristina Rexach*, *supra*, pág. 787.

De otra parte, **las excepciones al principio de favorabilidad se conocen como las cláusulas de reserva** contenidas en el estatuto. Esta Curia se ha enfrentado a varias controversias donde se cuestionan enmiendas a la ley penal que puedan resultar en una aplicación más benigna para la persona cumpliendo su sentencia. Por ejemplo, en *Pueblo v. Torres Cruz,* 194 DPR 53 (2015)*,* la controversia versaba sobre las enmiendas que la Ley Núm. 246-2014 incorporó al Art. 4 del Código Penal de 2012, 33 LPRA sec. 5004 y su relación con el principio de favorabilidad. En síntesis, el señor Torres Cruz argumentó que se le tenía que aplicar el principio de favorabilidad a su sentencia dictada en el 2013, debido a que la Ley Núm. 246-2014, reducía la pena del delito de escalamiento sin tener ninguna cláusula de reserva. Allí resolvimos que:

> Salvo que la Asamblea Legislativa disponga otra cosa mediante una cláusula de reserva, **es imposible impedir**, a *priori*, que una persona renuncie a invocar posteriormente los beneficios de una legislación que le aplica y le puede beneficiar. En otras palabras, no hay forma de impedir que la Asamblea Legislativa, retroactivamente, decida que, por virtud del principio de favorabilidad, procede reducir la pena de una persona convicta. **Si se quería evitar ese resultado,** lo correcto hubiese sido oponerse al P. del S. 1210 y no esperar a que [el mismo] se aprobara, y se convirtiera en la Ley Núm. 246-

2014, para luego oponerse a su aplicación. (Negrillas suplidas). *Pueblo v. Torres Cruz, supra,* pág. 69.

Asimismo, reiteramos que la única manera en que el Poder Legislativo podría impedir **que una ley más benigna se aplique retroactivamente, sin violar el principio de favorabilidad, sería incluyendo en dicha ley una cláusula específica de reserva.**

En *Pueblo v. González, supra*, atendimos la controversia de si el Código Penal de 2004, Ley Núm. 149-2004, contenía una cláusula de reserva que impedía su aplicación retroactiva.

> La profesora Nevares-Muñiz señala que, al momento de analizar si una nueva ley penal debe aplicarse de forma retroactiva, "se comparará la ley vigente al momento de cometer el delito con la ley nueva y **si ésta es más beneficiosa se aplicará retroactivamente**, *excepto que una cláusula de reserva lo proh[í]ba*". Nevares-Muñiz, *op. cit.,* pág. 10. (Itálicas en el original y negrillas suplida). Véase *Pueblo v. González, supra*, pág. 704.

> Por lo cual, resolvimos que:

> "la cláusula de reserva contenida en el referido Art. 308 del Código Penal de 2004 *impide* que un acusado por hechos delictivos cometidos durante la vigencia del derogado Código Penal de 1974 pueda invocar — vía el Art. 4, ante — las disposiciones del nuevo Código Penal. En virtud de ello, *a todos los hechos cometidos bajo la vigencia y en violación de las disposiciones del Código Penal de 1974 les aplicará el referido cuerpo legal en su totalidad. Ello así, ya que la clara intención legislativa es a los efectos de que el nuevo Código Penal tenga, **únicamente, aplicación prospectiva.**"* (Nota al calce omitida, itálica en el original y negrillas suplidas). *Pueblo v. González, supra,* pág. 708.

Es decir, las cláusulas de reserva que limitan el principio de favorabilidad han sido validadas **toda vez que fueron específicas y su alcance ha sido limitado a disponer que una ley más favorable al estado de derecho anterior será de aplicación prospectiva exclusivamente.**

C.  **La Ley Núm. 85-2022**

La Ley Núm. 85 fue aprobada el 11 de octubre de 2022 para enmendar el Artículo 308 de la Ley Núm. 146-2012, *Código Penal de Puerto Rico,* y la Ley Núm. 118 de 22 de julio de 1974, *Ley de la Junta de Libertad Bajo Palabra*. Esta se promulgó en respuesta a la preocupación social que surgía de la imposición de sentencias consecutivas que, aunque legalmente válidas, producen en la práctica encarcelamientos de por vida sin una oportunidad real de rehabilitación. Ante esta realidad, la Asamblea Legislativa buscó promover un sistema penal más humano y justo, alineado con la política pública constitucional de rehabilitación, al permitir que las personas convictas por múltiples delitos puedan ser consideradas para libertad bajo palabra tras cumplir la sentencia más onerosa, sin menoscabar la responsabilidad penal ni la protección de la sociedad. Véase, Exposición de Motivo de la Ley Núm. 85-2022.

En lo aquí pertinente, en la Sec. 1 de la referida ley se enmendó el Art. 308 de la Ley Núm. 146-2012, para que lea como sigue:

Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.

En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir quince (15) años de su sentencia o cinco (5) años si se trata de un menor de edad procesado y sentenciado como adulto.

[…]

En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, **la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos.** Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial. (negrilla suplidas)

En la Sec. 3 de la Ley Núm. 85-2022 el legislador

estableció que la Ley Núm. 146-2012 sería de aplicación

retroactiva,

[…] independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada. Las cláusulas de prohibiciones absolutas de libertad bajo palabra

en los delitos de leyes penales especiales no serán aplicables al caso de menores juzgados y sentenciados como adultos cuando contravengan lo aquí establecido.

En síntesis, la Ley Núm. 85-2022 estableció términos más favorables para cualificar a toda persona convicta bajo las disposiciones del Código Penal de 2012 a la JLBP. A su vez, es importante destacar que **dicha ley no estableció de forma diáfana y clara una cláusula de reserva, como en legislaciones anteriores, por lo que su aplicación retroactiva se tornó automática bajo el principio de favorabilidad.**

**D. La Ley Núm. 85-2024**

Casi dos años más tarde, se promulgó la Ley Núm. 85-2024 que en lo pertinente a la controversia ante nuestra consideración dispone:

Sección 3.-Cláusula de Exclusión de Jurisdicción de la Junta de Libertad Bajo Palabra.

**La Junta no tendrá jurisdicción** para atender los casos de las personas convictas **por los delitos de agresión sexual en todas sus modalidades,** agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, incluyendo sus tentativas, no podrán beneficiarse del privilegio de libertad bajo palabra, **indistintamente de la fecha de la comisión del acto delictivo ni el código penal o la ley especial utilizada para dictar sentencia,** incluyendo los Códigos Penales de 1974, 2004 y 2012.

**La Ley 85-2022 no aplicará retroactivamente** a las personas convictas por estas actuaciones delictivas, conforme a la clara intención de la Decimonovena Asamblea Legislativa de no extender este privilegio a los ofensores de la ley descritos en el párrafo anterior.

**La Ley 85-2022 no surtirá efecto en el cálculo de la sentencia de las personas convictas por los delitos de agresión sexual en todas sus modalidades,** agresión sexual conyugal, violación, actos lascivos, sodomía, incesto, secuestro, secuestro agravado y pornografía infantil, **indistintamente de la fecha de la comisión del acto delictivo ni el código penal** o la ley especial utilizada para dictar sentencia, incluyendo los Códigos Penales de 1974, 2004 y 2012. (Negrillas suplida). *Véase* Sección 3 de la Ley Núm. 85-2024.

De una lectura de la Ley Núm. 85-2024 queda meridianamente claro que las personas convictas por algún delito de agresión sexual, **indistintamente** de la fecha de la comisión del acto delictivo o del código penal aplicable, **quedan privadas del derecho a cualificar para libertad bajo palabra.**[6] **Es decir, no podrán ser considerados nunca por la JLBP.**

Por lo tanto, fue al amparo de esta legislación que, en el caso de autos, la JLBP se declaró sin jurisdicción. **Adelanto que la aplicación retroactiva de esta disposición es contraria al mandato constitucional contra las leyes *ex post facto*.** La aplicación retroactiva de una ley más punitiva a la ley vigente al momento de la comisión de los hechos delictivos viola la Constitución de los Estado Unidos en su Art. I, Sec. 10, Const. EE. UU., LPRA, Tomo 1, así como el Art. II, Sec. 12, Const. ELA, LPRA, Tomo 1, de la Constitución del Estado Libre Asociado de Puerto Rico.

---

[6] **"El lenguaje claro y explícito de un estatuto** no se debe tergiversar, mucho menos malinterpretar o sustituir. La función de la Rama Judicial no es legislar, sino interpretar las leyes aprobadas por la Rama Legislativa y constatar que no estén reñidas con la Constitución". (Negrillas suplidas). *Bomberos Unidos v. Cuerpo Bomberos et al.*, supra, 749.

**E. ¿Privilegio o Derecho Limitado?**

Para determinar si los confinados en el caso de autos adquirieron el derecho dispuesto en la Ley Núm. 85-2022, *supra*, es necesario adentrarse en la doctrina de los derechos adquiridos frente a la mera expectativa de derecho. No obstante, antes corresponde señalar una dicotomía conceptual que tanto el Tribunal Supremo de los Estados Unidos como este Tribunal han superado. Me refiero a la **dicotomía entre derechos y privilegios**, arraigada en una concepción tradicional del derecho administrativo que la jurisprudencia moderna ha dejado atrás. En *Board of Regents of State Colleges v. Roth*, 408 US 564, 571 (1972), el Tribunal Supremo de los Estados Unidos declaró que la doctrina jurisprudencial **"has fully and finally rejected the wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights."** (Negrillas suplidas)

En lo aquí pertinente, por aplicación del derecho constitucional al debido proceso de ley, sustantivo y procesal, la concesión de libertad bajo palabra se trata de un **derecho-limitado**, no un privilegio. Véanse *Martínez Torres v. Amaro Pérez*, 116 DPR 717, 723 (1985); *Maldonado Elías v. González Rivera*, 118 DPR 260 (1987); *Lupiáñez v. Srio. de Instrucción*, 105 DPR 696 (1977).[7]

---

[7] En *Maldonado Elías v. González Rivera*, supra, "[r]eiteramos que existe en Puerto Rico un procedimiento válido para la revocación de la libertar bajo palabra [el cual] … incluye ambas garantías constitucionales mínimas

En *Hernández, Romero v. Pol. de P.R.*, 177 DPR 121, 146 (2009) destacamos lo siguiente:

> Es imperativo mencionar que los derechos adquiridos, sin importar su procedencia, ya sea mediante legislación, por contrato o por "derecho común" **gozan de la misma protección que todo derecho constitucional**. Recientemente expresamos que los derechos adquiridos protegidos pueden concebirse como "consecuencia de un hecho idóneo, al producirlos en virtud de una ley vigente en el tiempo en que el hecho ha sido realizado, y que se han incorporado a una persona". Expresamos, además, lo siguiente:
>
> > En este sentido, el derecho adquirido no puede ser el conjunto de facultades que la ley anterior permitía que los ciudadanos ejerciesen, ya que esto sería el estado de derecho objetivo que la nueva ley intenta cambiar. El derecho adquirido, en cambio, **es una situación consumada, en la que las partes afectadas descansaron en el estado de derecho que regía al amparo de la ley anterior.** Así, los tratadistas distinguen entre la mera expectativa del derecho y los derechos adquiridos que ya entraron en el patrimonio de los sujetos involucrados. (Énfasis suplido.)"
>
> La agencia administrativa tiene la obligación de salvaguardar cualquier derecho adquirido que haya sido reconocido por ésta, al hacer cumplir la ley que administra. *La importancia de la teoría de los derechos adquiridos* tiene que ver principalmente con la aplicación del estado de derecho vigente en el tiempo, pero también ***con la seguridad jurídica de las personas naturales o jurídicas frente al ejercicio de las potestades unilaterales del Gobierno"***. (nota al calce e itálica omitidas y negrillas suplida). *Hernández, Romero v. Pol. de P.R., supra,* págs. 146-147.

Similarmente, en *Consejo Titulares v. Williams Hospitality*, 168 DPR 101 (2006), reconocimos que una decisión adoptada por la Junta de Directores de un inmueble sometido

---

tales como notificación y vista". Íd., pág. 269. El trámite que lleva a cabo la JLBJ "protegen adecuadamente los derechos constitucionales de aquel que ha recibido los beneficios de la libertad bajo palabra". Íd.

al régimen de propiedad horizontal, conforme a la legislación vigente al momento de su aprobación, no puede ser invalidada por la aplicación retroactiva de una ley posterior. Ello debido a que "la teoría de los derechos adquiridos prohíbe la aplicación retroactiva de una ley cuando esto afecte relaciones jurídicas existentes antes de la vigencia de la nueva ley, que nacieron fundamentándose en la legislación anterior." Íd., pág. 110.

En *Domínguez Castro et al. v. ELA I*, 178 DPR 1, (2010), también discutimos la doctrina de los derechos adquiridos en una controversia en la que se alegó que un estatuto confería el derecho a permanecer en un puesto público y que, por tanto, las personas afectadas no podían ser despedidas a raíz de una nueva ley de aplicación retroactiva. En ese caso, enfatizamos la necesidad de que el derecho adquirido reclamado surja del estatuto derogado, ya que "no cabe hablar de un derecho adquirido a la retención o a no ser cesanteado de un empleo en el servicio público, **pues se encuentra ausente el elemento del *amparo de una ley anterior* que hubiese concedido tal derecho**". (Itálicas en el Original y negrillas suplidas). Íd, págs. 69-70.

Así, nuestra jurisprudencia ha delineado consistentemente los contornos de los derechos adquiridos y los límites a su invocación. Además, esa construcción doctrinal encuentra **fundamento expreso en nuestro ordenamiento estatutario**, pues ha formado parte de nuestra

estabilidad jurídica desde el Código Civil de 1930 (derogado), cuyo Art. 3, 31 LPRA sec. 3, disponía:

> "Las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario. En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior."

Dicho principio fue reiterado en el Art. 9 del Código Civil de 2020 (vigente), el cual preceptúa que:

> "La ley no tiene efecto retroactivo, excepto cuando se dispone expresamente lo contrario. El efecto retroactivo de una ley no puede **perjudicar los derechos adquiridos al amparo de una ley anterior." (Negrillas suplidas).**

Asimismo, en *Asoc. Maestros v. Depto. Educación*, 171 DPR 640, 648 (2007), "[a]claramos que la retroactividad no sólo es la excepción, sino que tiene lugar en circunstancias extraordinarias [...]. A raíz de ello, son pocas las ocasiones en que nos hemos apartado de la norma general de irretroactividad, [...]".

Esta concepción no es exclusiva de nuestro ordenamiento jurídico. Más allá de su reconocimiento en nuestro derecho positivo, la doctrina de derechos adquiridos y su relación con el principio de irretroactividad de las leyes goza de amplio respaldo en diversas jurisdicciones. Ello responde a que históricamente el desarrollo jurídico de los países depende de la estabilidad y confianza en sus leyes.

A manera de ejemplo destaco que el derecho civilista español también recoge la protección a los derechos

adquiridos y eleva a rango constitucional la prohibición de retroactividad de las disposiciones no favorables o restrictivas de derechos individuales. En el Art. 9.3 de la Constitución de Española se dispone:

> "La Constitución garantiza el principio de legalidad, la jerarquía normativa, la publicidad de las normas, la irretroactividad de las disposiciones sancionadoras no favorables o restrictivas de derechos individuales, la seguridad jurídica, la responsabilidad y la interdicción de la arbitrariedad de los poderes públicos." España, Constitución Española, art. 9.3. [8]

"El principio constitucional de irretroactividad establece una limitación a todos los poderes con capacidad normativa, y por consiguiente tanto al propio legislador, como, por supuesto, al poder reglamentario de la Administración". Véase, L. López Guerra y otros [et al.], *Derecho Constitucional*, 6ª ed., Valencia, Ed. Tirant Lo Blanch, 2003, Vol. 1, pág. 72.[9] De esta manera, al igual que esta Curia, el Tribunal Constitucional de España ha reconocido límites al principio de irretroactividad de las leyes, entre ellos, la aplicación retroactiva de las normas penales más favorables al acusado. Íd.

---

[8] Véase también el Art. 2.3 del Código Civil español el cual dispone: "Las leyes no tendrán efecto retroactivo, si no dispusieren lo contrario."

[9] "También serán nulas de pleno derecho las disposiciones administrativas que vulneren la Constitución, las leyes u otras disposiciones administrativas de rango superior, las que regulen materias reservadas a la Ley, y las que establezcan la retroactividad de disposiciones sancionadoras no favorables o restrictivas de derechos individuales." Ley 39/2015, de 1 de octubre, también conocida como la Ley del Procedimiento Administrativo Común de las Administraciones Públicas.

De forma similar, la doctrina civilista de los derechos adquiridos tiene una formulación análoga en el derecho anglosajón bajo el concepto de "vested rights". Véamos a continuación su aplicación.

En *Landgraf v. USI Film Products,* 511 US 244, 265 (1994), el Tribunal Supremo de los Estados Unidos confirmó la presunción histórica en contra de la legislación retroactiva, al enfatizar que "consideraciones elementales de equidad dictan que las personas deben tener la oportunidad de conocer cuál es el derecho aplicable y de ajustar su conducta en consecuencia; las expectativas consolidadas no deben alterarse a la ligera". Al mismo tiempo, reconoció que el Congreso tiene la facultad, **dentro de los límites constitucionales**, de promulgar leyes con efecto retroactivo.[10] **"Una ley es impermisiblemente retroactiva si priva o menoscaba derechos adquiridos al amparo de la legislación vigente, o crea una nueva obligación, impone un nuevo deber, o añade una nueva carga o incapacidad respecto de transacciones o consideraciones ya realizadas"..** Véase, *Guzman v. Att'y Gen. U.S.,* 770 F.3d 1077, 1083-1084 (3d Cir. 2014) citando a *Landgraf v. USI Film Products*, supra, pág. 269.

Por último, las leyes retroactivas se han considerado como permisibles,

> [e]n ocasiones, donde **el legislador solamente** puede alcanzar la transformación de situaciones

jurídicas indeseables disponiendo el alcance retroactivo de determinadas leyes. De otra forma la sociedad estaría atada a perpetuidad **a normas que impiden su desarrollo.** '[E]l ordenamiento jurídico se resiste a ser inmovilizado en un momento histórico preciso, toda vez que por su propia naturaleza 'ordena relaciones de convivencia humana, y deben responder a la realidad de cada momento como instrumento de progreso y perfeccionamiento'. J. Suárez Collía, *El principio de irretroactividad de las normas jurídicas*, Madrid, Actas, 1994, pág. 56. (Negrillas suplidas) Véase, *Consejo de Titulares v. Williams Hospitality, supra*, págs. 107-108.[11]

"Solo en un ordenamiento en la que la seguridad jurídica sea un principio predominante pueden los ciudadanos defender sus intereses y derechos." L. López Guerra y otros [et al.], *Derecho Constitucional*, 6ª ed., Valencia, Ed. Tirant Lo Blanch, 2003, Vol. 1, pág. 66.

Examinado el derecho aplicable, procedo a aplicar el derecho a los hechos.

### III.

Conforme al marco de derecho antes enunciado correspondía a la mayoría de este Tribunal determinar si el señor Romero Figueroa y el señor Alemañy Rosado adquirieron el derecho limitado que prescribe la Ley Núm. 85-2022. Para ello, era

---

[11] Destacamos que en *Consejo Titulares v. Williams Hospitality, supra*, se citaron las expresiones del entonces Juez Asociado señor Rafael Hernández Matos Cardoza: "[S]abemos que la absoluta retroactividad del derecho positivo *sería* la muerte de la seguridad y de la confianza jurídica; pero también sabemos que la absoluta irretroactividad *sería* la muerte del desenvolvimiento del derecho. El respeto a los derechos adquiridos, a los hechos consumados, a las situaciones ya existentes, no se opone al establecimiento de reformas sociales constitucionales ni a leyes que se dan en vista de situaciones pasadas". Véase, además, *Ocasio v. Díaz*, 88 DPR 676, 722-723 (1963).

necesario precisar, en primer término, cuál es el derecho que dicha ley efectivamente les confiere.

La Sec. 1 de la Ley Núm. 85-2022 dicta que, en los delitos graves con una pena de 50 años de reclusión, la persona podrá ser considerada para libertad bajo palabra tras cumplir 15 años de condena. En su Sec. 2, supra, dispone que, en aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta **tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos.**

Del examen de la disposición estatutaria se concluye que la Ley Núm. 85-2022 no confiere un derecho automático de libertad bajo palabra, sino que concede **el derecho a ser considerado por la JLBP y ser evaluado al amparo de los 10 criterios de elegibilidad.**[12] El derecho a cualificar surge de los términos más favorables que dispone la propia Ley Núm.

---

[12] Los criterios de elegibilidad a tomarse en consideración para conceder el privilegio de libertad bajo palabra son los siguientes: (1) la naturaleza y circunstancias del delito o delitos por el cual se cumple la sentencia; (2) las veces que el convicto haya sido convicto o sentenciado; (3) una relación de liquidación de la sentencia o sentencias que cumple el confinado; (4) la totalidad del expediente penal, social y los informes médicos e informes por cualquier profesional de la salud mental sobre el confinado; (5) el historial de ajuste institucional; y del historial social y psicológico del confinado, preparado por la Administración de Corrección y el historial médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud; (6) la edad del confinado; (7) el o los tratamientos para condiciones de salud que reciba el confinado; (8) la opinión de la víctima; (9) planes de estudios, adiestramiento vocacional o estudios y trabajo del confinado; (10) lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra y cualquier otra consideración que estime pertinente.

85-2022. Es decir, no puede cualificar para ser evaluado por la JLBP **sin la aplicación de los términos más favorables que dispone la propia legislación.**

En el caso de autos, ambos peticionarios cumplieron con los términos de la Ley Núm. 85-2022 y fueron evaluados por el DCR aplicando esta disposición. Así las cosas, el DCR refirió ambos casos a la JLBP para su evaluación. Estando pendiente sus casos, se aprueba la Ley Núm. 85-2024 y la JLBP se declaró sin jurisdicción, al aplicar retroactivamente una ley más punitiva **que la ya aplicada** al señor Romero Figueroa y al señor Alemañy Rosado.

En ambos casos, los peticionarios fueron sentenciados bajo el Código Penal de 1974, Ley Núm. 115 del 22 de julio de 1974. Dicho Código no excluía a los convictos por delitos de agresión sexual del derecho a libertad bajo palabra. De hecho, **no excluía a los peticionarios por ninguno de los delitos por los que fueron sentenciados**. De igual forma, el Art. 3 de la Ley de la Junta de Libertad Bajo Palabra, según enmendado, al momento de la comisión de los delitos (entiéndase 1995 y 1998), tampoco excluía a los peticionarios del derecho a cualificar para dicho beneficio.

Por lo tanto, es forzoso concluir que, en efecto, la Ley Núm. 85-2024, aplicada tal cual fue aprobada, en los casos que nos ocupa **genera una aplicación retroactiva más punitiva que la ley vigente al momento de la comisión de los delitos de los peticionarios. Por tanto, se violenta y**

**vulnera la prohibición constitucional contra las leyes *ex post facto*.**

De otra parte, en cuanto a la "cláusula de reserva" dispuesta en la Ley Núm. 85-2024, al ser aplicada de manera retroactiva a la Ley Núm. 85-2022, también constituye una violación al debido proceso de ley, toda vez **que se eliminó el derecho adquirido a ser evaluado por la JLBP bajo este estatuto.** Interpretar lo contrario, como pretende la mayoría, sería avalar una eliminación de derechos arbitraria, en clara violación a nuestro ordenamiento jurídico.

Lo correcto para evitar la aplicación retroactiva de la Ley Núm. 85-2022 era incluir una cláusula de reserva en dicha ley para así limitar el principio de favorabilidad. Sin dicha cláusula de reserva, la Ley Núm. 85-2022, forzada por el principio de favorabilidad, es de aplicación retroactiva. De modo que ahora (dos años después), la legislatura no puede eliminar retroactivamente el derecho conferido por la Ley Núm. 85-2022, *supra,* a cualificar para ser evaluado por la JLBP con los términos que dispone dicha Ley. Importante notar que la controversia en este caso nunca fue si los peticionarios tienen un derecho a libertad bajo palabra, en realidad es **si los peticionarios tienen un derecho a ser evaluados por la JLBP en virtud de la Ley Núm. 85-2022 y si la aplicación retroactiva de la Ley Núm. 85-2024 constituye una violación al debido proceso de ley o la Constitución.**

En suma, la Ley Núm. 85-2024, aplicada tal cual fue legislada, genera una aplicación retroactiva más punitiva que la ley vigente al momento de la comisión de los delitos de los peticionarios. De manera que viola la prohibición constitucional contra las leyes *ex post facto*. La Ley Núm. 85-2022 les confirió a los peticionarios un derecho limitado a ser evaluados por la JLBP bajo términos más favorables. Dicho derecho se adquirió cuando se aprobó la Ley Núm. 85-2022 y el DCR aplicó sus términos más favorables y refirió los casos ante la JLBP. No obstante, estos permanecieron ante dicha agencia por casi 2 años, sin ser atendidos, hasta que se aprobó la Ley Núm. 85-2024, estatuto bajo el cual la JLBP se declaró sin jurisdicción.

Además, y siguiendo fielmente la jurisprudencia relacionada con la prohibición constitucional de las leyes *ex post facto*, no cabe duda de que una ley que contiene una cláusula de **aplicación retroactiva** por sí sola no es inconstitucional. Sin embargo, como en el caso que nos ocupa, la Ley Núm. 85-2024 en su Sec. 3, contiene una cláusula de exclusión que le eliminó la posibilidad de cualificar de los peticionarios para ser evaluado para el privilegio de libertad bajo palabra ante la JLBP. Esto constituyó, en efecto, la aplicación retroactiva de una ley más punitiva que la que existía al momento de la comisión de los delitos. En los casos de autos, la ley aplicable al momento de los hechos delictivo no excluía a los peticionarios de poder ser

evaluados para los beneficios de libertad bajo palabra, por lo cual eliminar dicho derecho retroactivamente, hace más oneroso el cumplimiento de su sentencia y, por ende, su aplicación retroactiva resulta inconstitucional. *Weaver v. Graham*, 450 US 24 (1981); *González v. ELA*, 167 DPR 400 (2006).

Por último, reitero que la "**cláusula de reserva**" que contiene la Ley Núm. 85-2024, es válida en cuanto a dicho estatuto, pero en cuanto a la referencia a la Ley Núm. 85-2022 no es otra cosa que una enmienda invalida. Las cláusulas de reserva son por definición una limitación al principio de favorabilidad de una ley penal. Su propósito es evitar que una ley más **benigna** aplique retroactivamente. Por lo tanto, si se quería evitar que la Ley Núm. 85-2022, *supra*, aplicara retroactivamente, la cláusula de reserva se tenía que incluir de forma clara en dicho estatuto. En el caso de marras la cláusula de reserva de la Ley Núm. 85-2024, *supra*, **aplicada a los hechos particulares del caso de autos** conflige con los derechos adquiridos y constitucionales de los peticionarios. Distinto sería el resultado al aplicarle la Ley Núm. 85-2024, *infra*, a confinados que no hayan adquirido el derecho a ser evaluados por la JLBP.

En conclusión, la JLBP tenía jurisdicción para evaluar a los peticionarios bajo los términos ya aplicados de la Ley Núm. 85-2022. Por tanto, erró dicha agencia en ambos casos al declararse sin jurisdicción.

**IV.**

Por los fundamentos antes expuestos, respetuosamente disiento del curso de acción adoptado por la mayoría de este Tribunal. La aplicación retroactiva de la Sec. 3 de la Ley Núm. 85-2024 es inconstitucional en aquellos casos que confinados bajo la Ley Núm. 85-2022 hayan adquirido el derecho de ser evaluados para el privilegio por la JLBP.

En este caso procedía revocar a los foros inferiores y devolver los casos a la JLBP para que se evalué a los peticionarios conforme a los parámetros de la Ley Núm. 85-2022 y los reglamentos aplicables.

Camille Rivera Pérez
Jueza Asociada